FILED
COURT OF APPEALS
DIVISION II

2015 AUG 26 PM 12: 52

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 40333-1-II |
| Respondent, | |
| v. | |
| KENNETH LANE SLERT, | PUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — On remand, our Supreme Court asks us to consider whether the trial court's violation of Kenneth Lane Slert's constitutional right to be present when several jurors were excused outside his presence was harmless error. Slert argues that the error was not harmless because the State cannot demonstrate that these excused jurors had no chance to sit on the jury. We hold that the State fails to show that the trial court's violation of Slert's constitutional right to be present during jury selection was harmless beyond a reasonable doubt. Accordingly, we reverse his conviction and remand for a new trial.

FACTS

The State charged Slert with first degree murder[1] and second degree murder.[2] On January 6, 2010, during a pretrial hearing, the parties agreed to design a questionnaire to determine what, if any, knowledge the prospective jurors had regarding the prior proceedings in Slert's case. Slert's counsel was concerned that knowledge of prior proceedings could taint the panel. Slert was present at this hearing.

On January 21, the parties discussed the proposed questionnaire at another pretrial hearing. The State suggested changing the questionnaire so that it referred to the prospective jurors' knowledge of "prior proceeding[s]" in Slert's case rather than "prior trial[s]." Report of Proceedings (RP) (Jan. 21, 2010) at 3. The court agreed. Slert was present at this hearing as well.

On January 25, the first day of trial, the court gave the jurors the questionnaire. After the prospective jurors filled out the questionnaires but before the court went on the record, a pretrial conference was held in chambers. During this conference, counsel for both parties agreed to excuse four prospective jurors. Slert was not present for this pretrial conference. In court, with Slert present, the court announced, "I have already, based on the answers [to the questionnaires], after consultation with counsel, excused jurors number 19, 36, and 49 from panel two which is our primary panel and I've excused juror number 15 from panel one, the alternate panel." 1 RP at 5. Slert's counsel also suggested that the four jurors were excused because they "have indicated knowledge of . . . prior court trials." 1 RP at 11. The record contains no other information about

---

[1] RCW 9A.32.030(1).

[2] RCW 9A.32.050(1)(a).

what the four excused jurors' answers to the questionnaires were or the extent of those jurors' knowledge of the prior proceedings in Slert's case. The trial court destroyed the answered questionnaires and saved only a draft of the questionnaire for the record. *State v. Slert*, 169 Wn. App. 766, 769 n.6, 282 P.3d 101 (2012) (*Slert* I), *rev'd*, 181 Wn.2d 598, 334 P.3d 1088 (2014) (*Slert* II).

In open court and with Slert present, the trial court and counsel then conducted individual voir dire of additional jurors based on their questionnaires. The court and counsel asked each juror about their knowledge of Slert's case, where they had heard about the case, and whether any prior knowledge of the case "would affect [their] ability to be fair and impartial." 1 RP at 18. Each of these jurors had varying levels of knowledge of Slert's case and prior proceedings against him. Slert's counsel asked to excuse four of those jurors for cause—three jurors had knowledge of Slert's prior trials and one juror had a friendly and professional relationship with one of the investigators whom the State did not plan to call as a witness. The court excused the three jurors who had knowledge of a prior trial even though each said that he or she could remain impartial. The trial court denied Slert's challenge to the witness who knew and worked with one of the investigators.

Voir dire then continued in open court until they finalized a panel of 14 jurors. Slert's jury consisted entirely of jurors from panel two, ranging from juror number 3 to juror number 43.

In February 2010, the jury convicted Slert of second degree murder and Slert appealed his conviction. On appeal, we held that the trial court violated both his right to a public trial and his right to be present when it excused the four prospective jurors based on their questionnaires in chambers. *Slert* I, 169 Wn. App. at 769. Because we held that Slert's public trial violation was

structural error requiring reversal, we did not address whether the violation of Slert's right to be present was harmless error. *Slert* I, 169 Wn. App. at 778-79. Our Supreme Court found no violation of Slert's public trial rights and remanded the case to us to determine whether the violation of Slert's right to be present was harmless error. *Slert* II, 181 Wn.2d at 609.

## ANALYSIS

Slert argues that the State fails to establish that the violation of his right to be present was harmless. We agree that the error was not harmless beyond a reasonable doubt.

### I. STANDARD OF REVIEW AND RULES OF LAW

The Fourteenth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to be present at "critical stages" in their trial. *State v. Irby*, 170 Wn.2d 874, 880-81, 884-85, 246 P.3d 796 (2011). A violation of a defendant's right to be present during all critical stages of his trial is subject to constitutional harmless error analysis. *Irby*, 170 Wn.2d at 885-86.

Under this standard, it is the State's burden to demonstrate that a violation of a defendant's right to be present was harmless beyond a reasonable doubt. *Irby*, 170 Wn.2d at 886; *State v. Burdette*, 178 Wn. App. 183, 201, 313 P.3d 1235 (2013). The State must prove beyond a reasonable doubt that the violation of a defendant's right to be present had no effect on the verdict. *Irby*, 170 Wn.2d at 886-87. In order to satisfy its burden in the context of juror dismissals, the State must demonstrate that the excused jurors "had no chance to sit on [Slert's] jury." *Irby*, 170 Wn.2d at 886.

4

## II. Slert's Burden To Raise the Possibility of Prejudice

As a threshold matter, the State argues that it is Slert's burden to first allege prejudice from the violation of his right to be present before the burden shifts to the State to demonstrate that any violation was harmless beyond a reasonable doubt. Its argument is based on *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983) ("Nonetheless, the defendant must first raise at least the possibility of prejudice."). Even assuming Slert is required to allege prejudice, he satisfies this burden. Slert raises the issue when he argues, "Furthermore, as in *Irby*, the prejudice is clear from the record." Suppl. Br. of Appellant at 6.

Here, as in *Irby*, the prejudice alleged is clear from the record: jurors were excused for cause for case-specific reasons that were never tested in the defendant's presence. *See* 170 Wn.2d at 886. The *Irby* court described the prejudice that Irby endured as "[r]easonable and dispassionate [jurors] may look at the same evidence and reach a different result. Therefore, the State cannot show beyond a reasonable doubt that the removal of several potential jurors in Irby's absence had no effect on the verdict." 170 Wn.2d at 886-87. Thus, the alleged prejudice was the removal of some potential jurors in Slert's absence. We hold that Slert adequately raised the possibility of prejudice.

## III. Error Not Harmless Beyond a Reasonable Doubt

Slert argues that the State cannot establish that the violation of his right to be present was harmless because three of the four excused jurors "had some chance of sitting on the jury." Suppl. Br. of Appellant at 7. We agree the error is not harmless.

Our Supreme Court held in *Irby*, that Irby's right to be present during a critical stage of his trial—jury selection—was violated and the error was not harmless because several jurors who had

5

been excused "fell within the range of jurors who ultimately comprised the jury" and "their alleged inability to serve was never tested by questioning in Irby's presence." 170 Wn.2d at 886.

In *Irby*, after prospective jurors were sworn and had filled out case-specific questionnaires, the court, in consultation by e-mail with counsel, excused 10 jurors before voir dire. 170 Wn.2d at 877-78. The record did not establish that Irby spoke with his counsel before counsel responded to the court's e-mail or that he was aware that the jurors would be excused. *Irby*, 170 Wn.2d at 884.

The trial court excused several jurors in *Irby* due to hardships and not due to any case-related objection. 170 Wn.2d at 886. Our Supreme Court concluded that had they been present for voir dire "and been subjected to questioning in Irby's presence as planned, the questioning might have revealed that one or more of these potential jurors were not prevented by reasons of hardship from participating." *Irby*, 170 Wn.2d at 886. The State also did not show that the excused jurors had no chance to sit on Irby's jury. *Irby*, 170 Wn.2d at 886-87.

Here, the facts are analogous to *Irby* because (1) excused jurors 19 and 36 from panel two fit within the range of jurors who were ultimately seated and (2) "their alleged inability to serve was never tested by questioning in [Slert's] presence." 170 Wn.2d at 886. Slert's final jury consisted of jurors from panel two ranging from juror number 3 to juror number 43.[3] Excused jurors 19 and 36 fit sequentially within that range of jurors. This is important because had these jurors not fit within the range of jurors who ultimately comprised Slert's jury, they would have had no chance to sit and any error would be harmless. *Irby*, 170 Wn.2d at 886.

---

[3] None of the jurors from the alternate panel, panel one, were seated on Slert's jury.

6

Yet these jurors were excused based solely on their written answers to a jury questionnaire during an in-chambers conference outside Slert's presence. The excused jurors' answers to the questionnaire were not "tested by questioning in [Slert's] presence" nor are their answers in the record because the questionnaires were destroyed. *Irby*, 170 Wn.2d at 886; *Slert* I, 169 Wn. App. at 769 n.6. Slert did not have the opportunity to discuss the basis for the excusal of these two jurors with his counsel either before or after the in-chambers conference. *Slert* I, 169 Wn. App. at 775; *Irby*, 170 Wn.2d at 884 ("'where . . . personal presence is necessary in point of law, the record must show the fact'" (alteration in original) (quoting *Lewis v. United States*, 146 U.S. 370, 372, 13 S. Ct. 136, 36 L. Ed. 1011 (1892))). Notably, the trial court *did* conduct individual voir dire in open court and in Slert's presence of 14 jurors whom Slert's counsel suspected might also have had prejudicial prior knowledge of the case based on their answers to the questionnaires. But the record provides no explanation for why those jurors were questioned in Slert's presence and the jurors that the court excused in chambers were not questioned in Slert's presence.

The dissent points out that the jurors in *Irby* were excused for hardship, where here the jurors were *likely* excused for bias. Dissent at 17. We disagree because (1) as stated above, the record is not clear about why the jurors were excused and (2) we view this distinction as one without a difference. The record demonstrates that the jurors were excused "for cause," that Slert's counsel agreed to their excusal, and that the jurors were likely excused because of knowledge of previous proceedings in Slert's case. 2 Clerk's Papers at 194.

Furthermore, even in *Irby* where the reasons for the jurors' hardship excusals were apparent from the record, the court nonetheless held that questioning the jurors in Irby's presence could have demonstrated their ability to serve. 170 Wn.2d at 886. Likewise, had Slert's jurors been

7

present for voir dire and questioned in Slert's presence, Slert could have established that some of the excused jurors were not prevented from serving due to bias. We reach this conclusion particularly because the jurors' answers to the questionnaires have been destroyed and we do not know the basis for their excusal. Moreover, during the individual voir dire, some jurors with prior knowledge of the case were dismissed while others were not. This creates more uncertainty about why the trial court dismissed the jurors in chambers, making it more difficult for the State to demonstrate beyond a reasonable doubt that the excused jurors had no chance to sit on Slert's jury. Having the answers to the jurors' questionnaires might show, beyond a reasonable doubt, that some or all of the potential jurors were biased such that they had no chance to serve on the jury. But those facts are not before us.

As the *Irby* court explained, "Reasonable and dispassionate minds may look at the same evidence and reach a different result. Therefore, the State cannot show beyond a reasonable doubt that the removal of several potential jurors in Irby's absence had no effect on the verdict." 170 Wn.2d at 886-87. Because (1) excused jurors 19 and 36 were never questioned in Slert's presence, (2) they fit within the range of jurors who were ultimately seated in this case, and (3) the State cannot demonstrate that they had no chance to serve on the jury, the constitutional violation of Slert's right to be present during jury selection was not harmless beyond a reasonable doubt.

IV. THE STATE'S ARGUMENTS FAIL

The State argues that (1) *Irby* does not control here because, unlike in this case, in *Irby* there was "no evidence in the record" to explain why jurors were excused, (2) the record establishes that the jurors who were excused in chambers here were prejudiced against Slert, and (3) our decision in *State v. Miller*, 184 Wn. App. 637, 338 P.3d 873 (2014), *review denied*, 182

8

Wn.2d 1024 (2015), is on point and should control in this case. Suppl. Br. of Resp't at 10. We disagree because (1) the record in *Irby* actually contained *more* evidence about why the jurors were excused than the record before us, and, like this case, the jurors were not questioned in the defendant's presence; (2) the State cannot establish that the jurors who were excused in chambers were prejudiced against Slert beyond a reasonable doubt; and (3) *Miller* is factually distinguishable.

First, the State's argument that there was no evidence in *Irby* as to why the jurors were excused is incorrect because the reasons that the trial court excused prospective jurors in *Irby were* apparent from the record. As explained above, two jurors were excused because their terms of jury duty were almost expired and the third was excused because he or she home schooled his or her children. *Irby*, 170 Wn.2d at 878. Here, there are just two statements about the jurors excused in chambers. Before voir dire, the court stated that "I have already, based on the answers [to the questionnaires] excused jurors number 19, 36, and 49 from panel two [and] juror number 15 from panel one." 1 RP at 5. Slert's counsel also stated, "I've got a list of 15 jurors that responded that they knew something about the case based on the publicity. My concern is none of them -- well, none of the ones other than the ones The Court has already pulled have indicated knowledge of any prior court trials." 1 RP at 10-11. Thus, the record in *Irby* provided more information than here about why the jurors were excused.

Nonetheless, the *Irby* court held that had the excused jurors been questioned in the defendant's presence, they might not have been excluded. 170 Wn.2d at 886-87. The issue in *Irby*, therefore, was not only whether the reasons that the court excused the jurors were apparent from the record, but also whether the defendant should have had the opportunity to be present to

9

test the jurors' potential biases. Like *Irby*, Slert did not have the opportunity to test the jurors about their potential bias in his presence.

Second, the State cannot demonstrate beyond a reasonable doubt that excused jurors 19 and 36 were prejudiced against Slert. These jurors' questionnaires and answers are not in the record because they were destroyed and no other part of the record demonstrates if they were prejudiced against Slert or what knowledge of the prior proceedings against him they might have had. *Slert* I, 169 Wn. App. at 769 n.6.

Because we cannot review the jurors' answers to the questionnaires and the record does not explain what, if any, specific answers led the trial court to excuse jurors 19 and 36, the State cannot prove beyond a reasonable doubt that the jurors were prejudiced against Slert. Moreover, we reject the dissent's view that the excused jurors' bias can be inferred from the record beyond a reasonable doubt under the circumstances presented here where the jurors' questionnaires and answers are unavailable for review. Dissent at 15.

Finally, *Miller* is factually distinguishable. In *Miller*, before the jury was sworn and voir dire conducted, the parties addressed preliminary courtroom security issues including whether and when Miller needed to be shackled and how close his guards would need to stand during trial. 184 Wn. App. at 640. During a recess, the court and the parties realized that one of the prospective jurors was in the courtroom during their discussion of courtroom security and excused that prospective juror in Miller's absence. *Miller*, 184 Wn. App. at 640. This court held that any violation of Miller's right to be present was harmless because the "potential prejudice – to both

10

Miller and the State – inherent in allowing [the juror] to remain on the jury after being present during pretrial motions was far too great." *Miller*, 184 Wn. App. at 647. Because of the potential for prejudice, we concluded that the juror had no chance to be on Miller's jury. *Miller*, 184 Wn. App. at 647.

Unlike in *Miller*, the excused jurors here had been sworn and had completed a case-specific jury questionnaire. *Irby*, 170 Wn.2d at 884; *Miller*, 184 Wn. App. at 640-41; *Slert* I, 169 Wn. App. at 770. The jury questionnaires here were designed to "test[ ] their fitness to serve as jurors in this particular case" and not to assess "the general qualifications of . . . potential jurors," as distinguished from *Miller* where witnessing pretrial motions and a debate about whether Miller should be shackled would disqualify any prospective juror in any case. *Irby*, 170 Wn.2d at 882. The *Miller* court applied the correct test and concluded that the challenged juror had no chance to sit on *Miller*'s jury. 184 Wn. App. at 647. Thus, *Miller* is factually distinguishable and does not control the outcome here.

In conclusion, because (1) two of the excused jurors were within the range of jurors ultimately seated on Slert's jury, (2) their fitness to sit on the jury was never tested by questioning in Slert's presence, and (3) the State cannot demonstrate beyond a reasonable doubt that they had

11

No. 40333-1-II

no chance to sit on this jury, the violation of Slert's constitutional right to be present during jury selection was not harmless beyond a reasonable doubt. Accordingly, we reverse his conviction and remand for a new trial.

JOHANSON, C.J.

I concur:

WORSWICK, J.

12

MELNICK, J. — (dissent) I respectfully dissent from the majority's opinion. The bases for my disagreement are twofold. First, I believe the harmless error test unequivocally requires Kenneth Slert to raise the possibility of prejudice and he failed to do so. Second, I believe the State has proven beyond a reasonable doubt that the violation of Slert's right to be present was harmless because the excused jurors had no chance to sit on the jury. I would affirm Slert's conviction.

The harmless error test requires a defendant to demonstrate a possibility of prejudice. Because the claimed error in this case, *i.e.* the right to be present, is of constitutional magnitude, the constitutional harmless error test applies. This test states, "if trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt." *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013); *see also Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). "Nonetheless, the defendant must first raise at least the possibility of prejudice." *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983).

An error is harmless only if we cannot reasonably deduct that the jury would have arrived at the same verdict in its absence. *State v. Franklin*, 180 Wn.2d 371, 383, 325 P.3d 159 (2014). The State must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24; *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980). *State v. Lui*, 179 Wn.2d 457, 528, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842, 189 L. Ed. 2d 810 (2014). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of error." *Franklin*, 180 Wn.2d at 382. Stated another way, "the error had *no* effect on

[Slert's] conviction for these crimes." *See State v. Garcia*, 179 Wn.2d 828, 845, 318 P.3d 266 (2014).

Despite the Supreme Court's direction in *Caliguri*, 99 Wn.2d at 509, that the defendant is required to raise at least the possibly of prejudice during application of the constitutional harmless error test, the majority does not seem to require such a showing. *See* Majority at 5. The majority states that "[e]ven assuming Slert is required to allege prejudice, he satisfies this burden." Majority at 5. I respectfully disagree with the majority.

The majority points to *State v. Irby*, 170 Wn.2d 874, 246 P.3d 796 (2011), for its authority that when jurors are excluded outside the defendant's presence, the defendant may not be required to even raise the possibly of prejudice. The *Irby* court did not address whether or not a defendant was required to raise at least the possibility of prejudice. However, I do not believe that the *Irby* court established a new harmless error test or eliminated the long-standing requirement that a defendant first raise the possibility of prejudice. *See Caliguri*, 99 Wn.2d at 509. In fact, the court in *Irby* recognized that a violation of a defendant's right to appear and defend in person may not be prejudicial to the defendant. 170 Wn.2d 881. The *Irby* court noted that it had rejected its earlier applications of the harmless error test that said prejudice is conclusively presumed when a defendant's right to appear and defend in person is violated. 170 Wn.2d at 886.

> We chose to follow instead "the harmless error standard adopted by most jurisdictions."
>
> . . . .
>
> The State has not met its burden here. We say that because the State has not and cannot show that three of the jurors who were excused in Irby's absence . . . had no chance to sit on Irby's jury. . . . [Therefore,] [i]t is no answer to say that the 12 jurors who ultimately comprised Irby's jury were objectionable. Reasonable and dispassionate minds may look at the same evidence and reach a different result. Therefore, the State cannot show beyond a reasonable doubt that the removal of several potential jurors in Irby's absence *had no effect on the verdict*.

No. 40333-1-II

*Irby*, 170 Wn.2d at 886-87 (emphasis added) (internal citations omitted) (quoting *Caliguri*, 99 Wn.2d at 509).

Furthermore, subsequent to *Irby*, we have required a defendant to raise the possibility of prejudice in the context of jury selection outside the defendant's presence. In *State v. Jones*, 175 Wn. App. 87, 303 P.3d 1084 (2013) (Wiggins, J.P.T.), the defendant claimed a violation of his right to appear and defend when the trial court randomly selected alternate jurors from the pool of accepted jurors outside his presence. We rejected his claim, but further held that if it was error, the error was harmless beyond a reasonable doubt. *Jones*, 175 Wn. App. at 108. In citing to *Irby's* harmless error test, we stated that "Jones does not demonstrate a possibility of prejudice" during the random selection of alternate jurors. *Jones*, 175 Wn. App. at 108. Although *Jones* involved the selection of alternate jurors and Irby involved the selection of the actual jurors, this distinction is not mentioned and is without a difference in regard to the defendant's need to demonstrate the possibility of prejudice.

The majority contends that even if Slert were required to allege prejudice, he raises the issue by his statement that "as in *Irby*, the prejudice is clear from the record." Majority at 5 (quoting Supp. Appellant's Br. at 6). Again, I respectfully disagree with Slert and the majority.

The possibility of prejudice or harm to Slert is not clear from the record. Slert must articulate the prejudice so we can meaningfully review it. He has failed to do so. Failure to point to the record precludes appellate review. RAP 10.3(a)(6); *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966) ("We are not required to search the record for applicable portions thereof in support of the plaintiffs' arguments."); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

15

Slert's assertion that "as in *Irby*, the prejudice is clear from the record" is without merit. Br. of Appellant at 6. In *Irby*, the Supreme Court clearly said the excused jurors were never questioned at all, let alone about the hardships which excused them. The prejudice in *Irby* is that *with questioning*, two of the excused jurors may have been able to sit for longer than one week and one juror, who home-schooled her child(ren), may have been able to sit for three weeks. The court concluded that the jurors were excused for reasons that may have been invalid. *Irby*, 170 Wn.2d at 886-87. As will be discussed below, the jurors excused from Slert's trial were questioned and they could never have sat on the jury because they were biased. Therefore, unlike in *Irby*, the prejudice to Slert is not clear from the record.

Also, we do not conclusively presume prejudice when a defendant's right to be present has been violated. *Irby*, 170 Wn.2d at 886. The majority states, "[T]he alleged prejudice was the removal of some potential jurors in Slert's absence." Majority at 5. This statement conclusively presumes prejudice from Slert's absence. In the present case, because Slert does not raise a possibility of prejudice and does not show prejudice, I would affirm his conviction.

Setting aside Slert's initial burden to raise the possibility of prejudice, I also disagree with the majority's conclusion that the State failed to prove that the violation of Slert's right to be present was harmless beyond a reasonable doubt. I would conclude that the State met its burden under the harmless error test because the jurors excused outside of Slert's presence had no chance to sit on the trial.

16

In *Irby*, the trial court utilized a juror questionnaire. It encompassed questions relating to both bias and hardship. *Irby*, 170 Wn.2d at 878. The trial court and the attorneys for both sides reviewed the completed questionnaires. The trial court then sent an e-mail to the attorneys and suggested that ten specific jurors should be excused. *Irby*, 170 Wn.2d at 877-78. After further e-mail exchanges, seven prospective jurors were excused by agreement of counsel. *Irby*, 170 Wn.2d at 878. This activity occurred outside the presence of Irby. *Irby*, 170 Wn.2d at 878. Our Supreme Court held that the trial court violated Irby's right to be present during jury selection and the error was not harmless because three of the seven jurors who had been excused "fell within the range of jurors who ultimately comprised the jury." *Irby*, 170 Wn.2d at 886.

In *Irby*, the court stated that the State "has not and cannot show that three" of the excused jurors "had no chance to sit on [the] jury." *Irby* 170 Wn.2d at 886. The court stated the State did not meet its burden of proof because the excused jurors' "alleged inability to serve was never tested by questioning in Irby's presence. Indeed, they were not questioned at all." *Irby*, 170 Wn.2d at 886. The court went on to state that "the questioning might have revealed that one or more of these potential jurors were not prevented by reasons of hardship from" serving. *Irby*, 170 Wn.2d at 886.

In our case, I believe the State has shown beyond a reasonable doubt that all of the excused jurors, after questioning, had no chance to sit on the jury. In *Irby*, like here, the trial court used juror questionnaires. In *Irby*, the questionnaires addressed issues of hardship and bias. In our case, the questionnaires addressed only bias. In *Irby*, the court said the excused jurors were not

17

questioned. Here, the jurors were questioned[4] and we know the reasons for the trial court excusing them. They were biased.

The undisputed evidence is that Slert's attorney drafted a juror questionnaire which the State generally accepted.[5] The two page questionnaire contained only questions that related to the potential jurors prior knowledge of, involvement with, or opinions about the accusations against Slert or the prior proceedings.[6] Slert wanted to insure that potential jurors with prior knowledge of either the facts of the case or of prior proceedings, were asked about it.

The trial court and the attorneys reviewed the completed questionnaires and all agreed to dismiss the jurors "based simply on their answers." *Slert*, 181 Wn.2d at 602. As the dissent in *Slert*, 181 Wn.2d 598, points out, the purpose of the questionnaires "was designed to identify jurors who may have had a bias due to prior knowledge of the case. . . . It asked the prospective jurors questions *only* about potential bias." *Slert*, 181 Wn.2d at 616. The questionnaire was case-specific. It contained no questions about hardship or other subjects that would lead to the

---

[4] Here, the questionnaires were probing enough that the Supreme Court seemed to consider the jurors to have been "questioned," which was not the case in *Irby*. In *State v. Slert*, 181 Wn.2d 598, 334 P.3d 1088 (2014), four justices concurred in the lead opinion, one justice wrote a concurring opinion, and four justices joined in the dissenting opinion. All of them agreed that the jurors in Slert were questioned. The lead opinion concluded that the jurors were dismissed "based simply on their answers." *Slert*, 181 Wn.2d at 602. The concurring opinion notes that "the questions were not used merely as a framework for questioning; they were used to evaluate jurors' fitness to serve and to excuse jurors for cause." *Slert*, 181 Wn.2d at 610. The dissent agrees that this portion of the proceeding involved questioning of jurors and formed the basis for its objection. *Slert*, 181 Wn.2d at 616.

[5] The State asked the court to substitute the term "prior proceeding[s]" for the term "prior trial[s]" that Slert proposed. Report of Proceedings (Jan. 21, 2010) at 3. The court agreed with the State.

[6] All of these areas of inquiry are the ones that I refer to as "bias" in this dissent.

disqualification of a juror other than bias. In contrast, the questionnaire in *Irby* involved issues of both bias and hardship. Some of the potential jurors were clearly excused for reasons other than bias. *Irby*, 170 Wn.2d at 877-78.

Unlike *Irby*, where the court said the State "has not and cannot show" the excused jurors "had no chance to sit on [the] jury," 170 Wn.2d at 886, here the State could and did prove beyond a reasonable doubt that the excused jurors had no chance to sit on the jury.

The majority says that the State has not shown harmless error because jurors 19 and 36 had some chance of sitting on the jury because they "fit within the range of jurors who were ultimately seated" on the jury and their fitness was "never tested by questioning in [Slert's] presence." Majority opinion at 5.

The majority specifically holds that jurors 19 and 36 "had a chance to sit" on the jury because their numbers sequentially fell within those jurors who were selected to hear the case. Majority at 5. I believe this analysis is a misapplication of *Irby*. Whether they had a chance to sit on the jury is based on substantive reasons. Because these jurors, and the other two, were excused solely based on their answers to questions in the questionnaire, and because the questionnaire related only to issues of bias and prejudice, I would hold that, beyond a reasonable doubt, the excused jurors had no chance to sit on the jury. Furthermore, I would hold that the State has met its burden under the harmless error test.

No. 40333-1-II

For the foregoing reasons, I respectfully dissent. I would affirm Slert's conviction for murder in the second degree.

_____
MELNICK, J.