**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 2 7 2016

~MaOsen, C.J.~
CHIEF JUSTICE

This opinion was filed for record

at 9:00 am on Oct 27, 2016

~Susan L. Carla~
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 92310-8 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| KENNETH SLERT, | ) | |
| Respondent. | ) | Filed OCT 2 7 2016 |

GONZÁLEZ, J. — Kenneth Slert has been convicted three times of killing John Benson. His first two convictions were reversed on appeal. Potential jurors in his third trial were given an initial written questionnaire in an attempt to determine whether any knew of Slert's prior convictions. Based on the written answers and after a discussion in chambers and out of Slert's presence, four jurors were dismissed. For the first time on appeal, Slert challenged his conviction on the grounds that the discussion in chambers violated his right to be present at a critical stage of his own trial. We conclude Slert waived his right to raise his exclusion from the in-chambers discussion by not raising it at trial. We also conclude that any error was harmless beyond a reasonable doubt as it is plain the dismissed

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

jurors had disqualifying knowledge of Slert's prior convictions or disqualifying opinions about his guilt. Accordingly, we reverse the Court of Appeals and affirm his conviction.

FACTS

A more complete recitation of the facts that led to this case can be found in *State v. Slert*, 181 Wn.2d 598, 600-02, 334 P.3d 1088 (2014) (*Slert IV*) (González, J., lead opinion). Briefly, Slert and Benson met one night at a hunting camp near Mount Rainier. After they drank together for a time, Slert shot and killed Benson. Slert has admitted from the beginning that he killed Benson but has maintained it was in self-defense.

By the time of the third trial, there was a real risk that a potential juror would have heard about Slert's prior convictions and be biased against him. The prosecutor and defense counsel agreed they did not want to risk such a potential juror tainting the panel during voir dire (which could have necessitated dismissing the panel and calling a new one) by "blurt[ing] out, 'Oh, yeah, I read about that case and that guy should be hanging.'" Verbatim Report of Proceedings (VRP) (Jan. 6, 2010) at 3-4. To limit the risk, the court and counsel agreed to give the jurors a written questionnaire concerning their knowledge of "prior proceedings" and any opinions they might have formed about the case. Clerk's Papers (CP) at 360-61. Based on

2

the potential jurors' written answers, and after consultation with counsel in-chambers, the judge dismissed four jurors in open court.[1] The completed questionnaires, the details of the in-chambers discussion, and the decision to have it in chambers are not part of the record before us. The clerk's minutes simply reflect that a "[p]retrial conference was held in chambers," CP at 194, and the record reports that "based on the answers" to the questionnaire, jurors 15, 19, 36, and 49 were dismissed, 1 VRP (Jan. 25, 2010) at 5. Slert was present when the four jurors were dismissed but did not object, depriving the trial court of the ability to promptly remedy any error.

The jury found Slert guilty of second degree murder. In 2012, the Court of Appeals found that the in-chambers discussion about the jurors' answers to the questionnaires violated both Slert's right to be present and the open public trial right guarantees of our state constitution. *State v. Slert*, 169 Wn. App. 766, 769, 282 P.3d 101 (2012), *rev'd*, 181 Wn.2d 598. The Court of Appeals spent the bulk of its 2012 opinion analyzing the open public trial issue. *Id.* at 771-79. The Court of Appeals did not reach whether, standing on its own, any violation of Slert's right to be present was reversible error. In 2013, we accepted review of the open public trial issue, reversed, and

---

[1] While the record does not make clear whether Slert was present during the chambers' discussion, Slert asserts, and the State does not dispute, that he was not.

3

remanded back to the Court of Appeals to determine what it had not reached before: whether the violation of Slert's right to be present was harmless. *Slert* IV, 181 Wn.2d at 603-04, 609. In 2015, Court of Appeals, via a split decision, found that the right to be present error was not harmless because two of the dismissed jurors were within the range of those who sat on the jury. *State v. Slert*, 189 Wn. App. 821, 827, 831, 358 P.3d 1234 (2015) (citing *State v. Irby*, 170 Wn.2d 874, 886, 246 P.3d 796 (2011)).

We accepted review again. After we accepted review, but before oral argument, we released our opinion in *State v. Jones*, which found a defendant had failed to preserve a right to be present claim by not timely objecting to his exclusion from the selection of alternate jurors. 185 Wn.2d 412, 427, 372 P.3d 755 (2016). After oral argument, we asked the parties to brief the effect of *Jones* and the law of the case doctrine. We thank the parties for their supplemental briefing.

## ANALYSIS

The criminal defendant's right to be present is rooted in the Sixth Amendment to the United States Constitution; the due process clauses of the state and federal constitutions (U.S. CONST. amend. V; WASH. CONST. art. I, § 3); and article I, § 22 of our own constitution. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985) (citing *Illinois*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *Snyder v.*

*Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled*

*on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed.

2d 653 (1964)); *Irby*, 170 Wn.2d at 884-85. Whether the defendant's right

to be present has been violated is a question of law we review de novo. *Irby*,

170 Wn.2d at 880 (citing *State v. Strode*, 167 Wn.2d 222, 225, 217 P.3d 310

(2009)). If the right is violated, we will reverse unless we are persuaded

beyond a reasonable doubt that the error was harmless. *Id.* at 886 (citing

*State v. Caliguri*, 99 Wn.2d 501, 508, 609, 664 P.3d 466 (1983)). "The core

of the constitutional right to be present is the right to be present when

evidence is being presented." *In re Pers. Restraint of Lord*, 123 Wn.2d 296,

306, 868 P.2d 835 (1994) (citing *Gagnon*, 470 U.S. at 526). "Beyond that,

the defendant has a 'right to be present at a proceeding whenever his

presence has a relation, reasonably substantial, to the fulness of his

opportunity to defend against the charge.'" *Id.* (internal quotation marks

omitted) (quoting *Gagnon*, 470 U.S. at 526). In *Irby*, we held that the right

to be present extended to an e-mail conversation about individual jurors'

fitness to serve on the particular case. *Irby*, 170 Wn.2d at 882. Under *Irby*

(which was announced after Slert was tried for the third time), Slert had a

right to be present during the discussion of the potential bias of these jurors.

5

But while Slert had a right to be present during the in-chambers discussion, he is not entitled to relief if he waived appellate review by not properly preserving the error he claims on appeal.[2] *See, e.g., Jones*, 185 Wn.2d at 415; *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007). It has long been the rule in Washington that "'insofar as possible, there shall be one trial on the merits with all issues fully and fairly presented to the trial court at that time so the court may accurately rule on all issues involved and correct errors in time to avoid unnecessary retrials.'" *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (quoting *Haslund v. City of Seattle*, 86 Wn.2d 607, 614, 547 P.2d 1221 (1976)). We recognize there are cases, such as *Irby*, where prompt objection can be excused based on the particular facts of the case. But this case is significantly different from *Irby*. In *Irby*, the dismissal of the jurors happened in an e-mail between the judge and counsel. 170 Wn.2d at 884. There is no reason to think that Irby knew about the e-mail or had a reasonable opportunity to object. *Id.* Here, by contrast, the dismissal happened in open court, in Slert's presence, directly after the

---

[2] Slert suggests this issue is not properly before us because it was not raised by either party and was out of the scope of our earlier remand to Division Two. We respectfully disagree. "[T]his court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision." *Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988) (citing *Seigler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972)). We see no reason *Alverado* would not extend to issues distinct from those within the scope of an initial remand.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

in-chambers conference he now complains of. Further, *Irby* was decided on the merits, without consideration of whether any error was preserved.

We recognize that Slert's attorney was complicit in any error made here, but we are not presented with an ineffective assistance of counsel claim (and indeed, it is difficult to imagine how agreeing to dismiss jurors who knew one's client had previously been convicted of the same killing could be ineffective assistance). Instead, we are considering whether Slert is entitled to relief for an alleged violation of his right to be present that he has raised for the first time on appeal.

We find he is not. This case is similar to *State v. Elmore*, where the defendant challenged the state's voir dire for the first time on appeal. 139 Wn.2d 250, 277-78, 985 P.2d 289 (1999). We found the challenged error was unpreserved and declined to consider it. *Id.* Similarly, in *Jones*, we recently found untimely a defendant's claim that his right to be present was violated when he was not present for the selection of alternate jurors. *Jones*, 185 Wn.2d at 426. There, the defendant raised the claim for the first time in a motion for a new trial. We found that by waiting, the defendant waived the claim. *Id.* The failure to timely object prevented the trial court from mending any error and creating a clear record for the appellate court to

7

review. As in *Elmore* and *Jones*, we find Slert waived consideration of any error.[3]

We turn now to whether any violation of Slert's right to be present was harmless beyond a reasonable doubt given the record before us. We find that it was. It is properly the role of the trial judges to excuse potential jurors who have biased opinions or feelings about the case they are asked to decide before being called to the jury. 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4109, at 205 (3d ed. 2004). The judge need not wait for the parties to challenge such jurors. "If the judge after examination of any juror is of the opinion that grounds for challenge are present, he or she shall excuse that juror from the trial of the case." CrR 6.4(c)(1); *see State v. Roberts*, 142 Wn.2d 471, 519,

---

[3] The dissent asserts that "our cases establish that constitutional rights require a knowing, voluntary, and intelligent waiver." Dissent at 3. None of the cases cited by the dissent support this broad assertion, and we find none. Certainly, *some* constitutional rights can only be relinquished by a knowing, voluntary, and intelligent waiver, but our courts have considered the individual constitutional right at issue, not constitutional rights as some sort of undifferentiated mass. The most that has been said is that "[i]n general, constitutional rights may only be waived by knowing, intelligent, and voluntary acts," but no actuarial accounting of rights were made in the opinion. *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994) (citing *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984)). We are skeptical that the proposition offered by the dissent is entirely accurate. We do not demand a full colloquy with the bench to assure the waiver is knowing, voluntary, and intelligent before a defendant waives the right to testify; or waives the right to remain silent; or declines to confront one of the state's witnesses; or extends the speedy trial deadline. But regardless, the question we decide is not whether Slert waived any right to be present while the jurors' answers to the questionnaires were discussed. The question is whether he waived *review* of that claim of error.

14 P.3d 713 (2000) (noting trial judge did not err by dismissing juror for cause without waiting for defendant's voir dire). "Criminal defendants have a federal and state constitutional right to a fair and impartial jury." *State v. Irby*, 187 Wn. App. 183, 192-93, 347 P.3d 1103 (2015) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S. Ct. 692, 42 L. Ed. 690 (1975)), *review denied*, 184 Wn.2d 1036 (2016). "A trial judge has an independent obligation to protect that right." *Id.* at 193 (citing *State v. Davis,* 175 Wn.2d 287, 316, 290 P.3d 43 (2012)). Thus, jurors who have actual or implied bias should be excused by the trial court. CrR 6.4(c)(2); RCW 4.44.170; *Irby*, 187 Wn. App. at 197. Parties are not required to challenge such jurors for cause, though they certainly should. *See* CrR 6.4(c). Once the trial judge concludes a juror has formed an opinion that could prevent impartial judgment of the facts, the trial judge should excuse that juror. *Id.* Our Court of Appeals recently found it was reversible manifest constitutional error for the trial judge to fail to excuse a juror who demonstrated actual bias during voir dire despite the lack of a contemporaneous objection. *Irby*, 187 Wn. App. at 193.

The questionnaire at issue here began by informing the jurors of a few salient facts:

> Kenneth L. Slert is charged with one count of Murder in the Second Degree stemming from an incident that occurred up near Mt. Rainier

9

National Park on 10/24/00 in Gifford Pinchot National Forest. There have been a number of prior proceedings in this case which were reported by both the newspapers and the radio, since October 2000 and most recently in late 2009. It is alleged that Mr. Slert shot and killed John Benson while both were hunting.

CP at 360. In relevant part, the jurors were then asked:

2. Have you heard or read about this case from any source whatsoever?

. . . .

7. What do you believe you know about this case? . . .

8. Have you formed an opinion or feeling about this case whatsoever?

. . . .

9. If you have formed any such opinions or feelings, please indicate those opinions and/or beliefs:

CP at 360-61. Space was provided to answer the questions. *Id.* After the in-chambers conference, the judge went back into open court and stated on the record that "based on the answers" to the questionnaire and "after consultation with counsel," jurors 15, 19, 36, and 49 were excused. 1 VRP (Jan. 25, 2010) at 5.

While questionnaires completed by those four jurors are not part of the record before us, we know the conclusion the judge, the prosecutor, and the defense counsel reached upon reviewing their answers. Counsel and the trial judge concluded that those four jurors should be excused. We may thus

10

reasonably infer that the four jurors had disqualifying opinions or feelings about the case. While the evidence we have is circumstantial, as we tell every jury in every jury trial, "[t]he law does not distinguish between direct and circumstantial evidence in terms of their weight or value in finding the facts in this case. One is not necessarily more or less valuable than the other." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.01, at 181 (4th ed. 2016); 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 1.03, at 29 (6th ed. 2012). It is logic, not conjecture, that allows us to draw reasonable inferences from the record. Further, the lack of a timely objection itself is strong evidence that Slert and his counsel "did not perceive any prejudicial error until after receiving an unfavorable verdict." *Jones*, 185 Wn.2d at 426-27 (citing *State v. Williams*, 96 Wn.2d 215, 226, 634 P.2d 868 (1981)). Since the jurors must have had disqualifying opinions or feelings about Slert's case, we conclude that excluding them was harmless beyond a reasonable doubt.[4]

---

[4] The dissent seems to suggest that *Irby* created an exclusive, numerical impossibility test to determine if a violation of the defendant's right to be present was harmless beyond a reasonable doubt. Dissent at 4-5. We find no such exclusive test in *Irby*. Certainly, in *Irby*, the court considered whether it was possible the jurors excluded out of Irby's presence could have been seated on the jury based on their juror numbers. 170 Wn.2d at 886. But that consideration was based on the facts of that case; it did not establish the exclusive method to test whether the error was harmless.

11

Finally, we turn to whether the law of the case doctrine prevents our consideration of whether any error was preserved. We find that it does not. Relevantly, "the doctrine provides where there has been a determination of applicable law in a prior appeal, the law of the case doctrine ordinarily precludes an appeal of the same legal issue." *Roberson v. Perez*, 119 Wn. App. 928, 931, 83 P.3d 1026 (2004). Whether Slert preserved review of the error has not been finally determined by any court until now. Further, this court has authority to reach any issue necessary to a just disposition. *Alverado*, 111 Wn.2d at 429 (citing *Seigler*, 81 Wn.2d 448). The law of the case doctrine does not prevent our review.

CONCLUSION

We hold that Slert has not preserved his right to be present challenge and that the law of the case doctrine does not bar our review. We also hold that any error was harmless beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals and reinstate Slert's conviction.

12

Gonzáles, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Fairhurst, J.

_____, J

*State v. Slert (Kenneth Lane)*

No. 92310-8

JOHNSON, J. (dissenting)—The majority confuses and conflates two independent and separate principles: constitutional waiver and failure to preserve error. Compounding this, the majority applies the wrong standard of review and concludes this "waived" and "unpreserved" error is harmless. Majority at 1, 7. The Court of Appeals correctly concluded Kenneth Slert's constitutional right to presence was violated and not harmless, and should be affirmed.

As the majority correctly recognizes, the Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to be present at all "critical stages" of a criminal proceeding. *Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant."). Likewise, article I, section 22 of the Washington Constitution confers the accused with the right to "appear and defend in person" during criminal prosecutions. Collectively, these provisions protect a

For the current opinion go to https://www.lexisnexis.com/clients/wareports/.

defendant's right to be present during critical stages of trial. The majority correctly recognizes the constitutional nature of the error here, yet fails to follow our cases analyzing this exact error. More troubling is the majority's apparent recognition of our prior case holdings, without explanation or analysis of what new rule, if any, is being crafted.

In *State v. Irby*, 170 Wn.2d 874, 246 P.3d 796 (2011), we analyzed both the Fourteenth Amendment due process right under the United States Constitution and the article I, section 22 right to presence under the Washington Constitution. *Irby* highlighted at least one difference between the federal and state constitutions: "Unlike the United States Constitution, article I, section 22 of the Washington Constitution provides an explicit guaranty of the right to be present." *Irby*, 170 Wn.2d at 884. The *Irby* court recognized that "[a]s early as 1914," the state constitution granted the accused the right to appear and defend themselves at every stage of the trial where the defendant's substantial rights may be implicated. *Irby*, 170 Wn.2d at 885. We held:

> Jury selection is unquestionably a "stage of the trial" at which a defendant's "substantial rights may be affected," and for that reason we do not hesitate in holding that Irby's absence from a portion of jury selection violated his right to "appear and defend in person" under article I, section 22 as well as the due process clause of the Fourteenth Amendment.

*Irby*, 170 Wn.2d at 885.

*State v. Slert (Kenneth Lane)*, No. 92310-8
(Johnson, J., dissenting)

In this case, a portion of jury selection was conducted in chambers, without the defendant's presence, violating his constitutional rights, and as the Court of Appeals concluded, a new trial is required. The majority confuses the applicable standard of review.

Our cases establish that constitutional rights require a knowing, voluntary, and intelligent waiver.[1] *See State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996) (analyzing a defendant's waiver of his right to testify); *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994) (analyzing a defendant's waiver of his right to a jury); *State v. Wheeler*, 108 Wn.2d 230, 237-38, 737 P.2d 1005 (1987) (analyzing a defendant's waiver of his right to remain silent); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984) ("A waiver of counsel must be knowing, voluntary, and intelligent, as with any waiver of constitutional rights." (citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972))). Nowhere in this record is evidence supporting a constitutional waiver. The majority then focuses on cases requiring any error to be "preserved" by objections at trial.

---

[1] In note 3, the majority asserts that we do not demand a full colloquy with the bench to assure that waivers are knowing, voluntary, and intelligent. The majority misses the point: the requirement is that constitutional rights require a knowing, voluntary, and intelligent waiver, not that it be conducted on the record with a full colloquy.

3

The majority cites *Elmore* in support of its analysis. Majority at 7 (citing *State v. Elmore*, 139 Wn.2d 250, 277-78, 985 P.2d 298 (1999)). *Elmore* involved a challenge to the propriety of the prosecutor's in-court questioning during voir dire, where no objections were raised. *Elmore* correctly characterized the issue as procedural in nature, not constitutional, correctly concluding the lack of objection precluded review. *Elmore* provides no support here.

Next, *State v. Jones*,[2] cited and relied on by the majority, does not hold otherwise. In that case, we held the defendant's right to a public trial, factually, was not violated where during a recess, a random drawing of jurors was conducted. Although the right to presence was discussed, that discussion was in the context of the court having already concluded no constitutional closure occurred. Since *Jones* did not involve a constitutional claim, the analysis of preservation of error correctly applied the nonconstitutional analysis. *Jones* cannot be read as establishing a new rule applicable outside its context. Such a new rule would require overruling cases and establishing and applying the applicable constitutional analysis—something that cannot be found anywhere in the *Jones* opinion.[3]

---

[2] 185 Wn.2d 412, 372 P.3d 755 (2016).

[3] The majority seems to embrace a preservation of error standard our cases have rejected. *See State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012) (article I, section 22 public trial analysis).

Then, the majority apparently embraces a new constitutional harmless error rule, without acknowledgment. In *Irby*, we held it was the State's burden to prove the violation to the defendant's constitutional rights was harmless beyond a reasonable doubt. The *Irby* court found that the State could not meet this burden "because the State has not and cannot show that three of the jurors who were excused in Irby's absence, namely, jurors 7, 17, and 23, had no chance to sit on Irby's jury." *Irby*, 170 Wn.2d at 886.

Based on *Irby*, the Court of Appeals here held that the State could not prove beyond a reasonable doubt that the violation to Slert's right to be present was harmless. The court keyed in on the fact that not only was there no record to review, but also that some of the excused jurors could have been impaneled on Slert's jury. Stated inversely, the State could not prove there was no chance that some of the excused jurors would have sat on the jury. Based on this, the Court of Appeals correctly held that the error could not be harmless beyond a reasonable doubt.

The majority here claims that "circumstantial" evidence tells us the completed juror questionnaires plainly meant the jurors must have "had disqualifying opinions or feelings about Slert's case." Majority at 11. This is impossible to know, obviously, because no record exists to support the majority's conjecture.

5

*State v. Slert (Kenneth Lane)*, No. 92310-8
(Johnson, J., dissenting)

The majority's conclusion is based on speculation, not the record's evidence.

The Court of Appeals should be affirmed.