

2019 FEB 19 AM 8: 55

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 75074-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MICHELE ANDERSON, | |
| Appellant. | FILED: February 19, 2019 |

CHUN, J. — A jury convicted Michele Anderson of six counts of aggravated murder in the first degree with a firearm sentencing enhancement for each charge. On appeal, Anderson contends the trial court denied her right to counsel of choice on multiple occasions. She also raises issues relating to the right to a public trial, the right to be present at critical stages of trial, the jury's consideration of the information, and communication with the jury regarding the death penalty. For the reasons discussed below, we affirm.

I.
BACKGROUND

On the morning of December 26, 2007, Judy Anderson did not appear for work. After attempting to reach Judy[1] by telephone, her friend and co-worker, Linda Thiele, drove to the Anderson house. When she entered the home, Thiele discovered several dead bodies. Thiele called 911. Law enforcement

---

[1] For clarity, this opinion refers to certain family members by their first names. We intend no disrespect.

discovered the bodies of Judy and her husband, Wayne, behind the house. Inside the house, they found the bodies of Scott Anderson (Wayne and Judy's son), his wife, and their two young children. All six victims had been shot.

Later that day, Michele Anderson and her boyfriend, Joe McEnroe, arrived at the house. Anderson told the King County Sheriff detectives she was Wayne and Judy's daughter and lived on the property in a trailer. During her initial conversation with a detective, Anderson did not question law enforcement's presence or inquire about her family. The detective became suspicious that Anderson was withholding information. Eventually, Anderson told the detectives she had shot and killed all six family members. In recounting the details to detectives, Anderson changed her story several times, and eventually implicated McEnroe in the deaths as well.

On December 28, 2007, the King County Prosecuting Attorney's Office charged Anderson and McEnroe with six counts of aggravated murder in the first degree with a firearm sentencing enhancement for each charge. In October 2008, prosecutors provided notice of a special sentencing proceeding to determine whether to impose the death penalty, but subsequently withdrew the notice. In April 2011, the trial court severed Anderson's and McEnroe's cases. After years of proceedings, Anderson's trial began in January 2016 and concluded on March 3, 2016 with guilty verdicts on all six counts, including the aggravating circumstances and firearm enhancements. She now appeals.

II.
ANALYSIS

A. Right to Counsel of Choice

Anderson contends the trial court violated her Sixth Amendment right to counsel of choice on three separate occasions. The State argues Anderson abandoned her initial request for substitution of retained counsel, thereby waiving the issue on appeal, and never effectively renewed that request. We agree with the State.

"The Sixth Amendment guarantees the right to select and be represented by one's preferred attorney." State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010). This right includes a defendant's right to choice of private counsel. Aguirre, 168 Wn.2d at 365. However, a defendant's right to choice of private counsel has limitations. Aguirre, 168 Wn.2d at 364. For example, a defendant does not have the right to representation by an attorney the defendant cannot afford or one who declines to serve as counsel. Aguirre, 168 Wn.2d at 365. Additionally, the right to choose counsel does not permit a defendant to unduly delay proceedings. Aguirre, 168 Wn.2d at 365. The trial court weighs the defendant's right to choose counsel against the public's interest in the prompt and efficient administration of justice. Aguirre, 168 Wn.2d at 365.

Erroneous deprivation of the right to counsel of choice constitutes structural error requiring reversal without a showing of prejudice. United States v. Gonzalez-Lopez, 548 U.S. 140, 146, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006). However, when retention of counsel of choice requires a continuance, the trial court must balance the defendant's right with the trial court's need to manage its

3

calendar. Aguirre, 168 Wn.2d at 365. In such cases, resolution of the balancing of defendant's rights and efficient administration of justice "falls squarely within the discretion of the trial court." Aguirre, 168 Wn.2d at 365. Therefore, an appellate court reviews such a decision for abuse of discretion. See Aguirre, 168 Wn.2d at 365-66.

### 1. Motion to Substitute M. Julian Denes as Retained Counsel

In June 2008, Anderson's appointed counsel, attorneys Cindy Arends and Kevin Dolan, moved to withdraw due to fundamental differences with their client on the direction of the defense. Soon after, Anderson moved to discharge Arends and Dolan, and substitute privately retained attorneys Philip Sayles and M. Julian Denes. Before the trial court heard the motion, Sayles declined to represent Anderson, leaving only Denes as private counsel.

At the time of the request for substitution, more than seven years before her trial began, Anderson still faced the possibility of a death sentence. The Washington Association of Criminal Defense Lawyers Death Penalty Committee filed a brief to express concern about Sayles and Denes as Anderson's representatives in a capital case. The brief focused on the importance of complying with Special Proceeding Rules—Criminal (SPRC) 2 pertaining to death penalty representation, which specifies requirements for attorneys appointed to defend capital cases. Sayles and Denes did not meet the requirements of SPRC 2.

In early July 2008, the trial court considered briefing and oral argument on whether SPRC 2 applied to retained counsel and whether Anderson's Sixth

Amendment right to retain attorneys of her choice superseded the requirements of SPRC 2. During oral argument, Denes informed the trial court of Sayles's departure and requested appointment of an SPRC 2 lawyer to help litigate the case. The court concluded that Anderson's right to counsel of choice was subject to SPRC 2 and denied the motion to substitute Denes as counsel. The trial court granted Arends and Dolan's motion to withdraw, ordered new appointed counsel, and requested Arends and Dolan remain as representatives until filing of a notice of appearance by new counsel.

During a hearing on July 31, 2008, the trial court considered the question of who represented Anderson in light of Arends and Dolan withdrawing as counsel and the denial of the motion to substitute Denes. Prior to the hearing, Denes had filed a motion for reconsideration of the motion to substitute counsel on Anderson's behalf. Also, the court had appointed attorney Colleen O'Connor to provide Anderson with advice on her right to counsel. At the hearing, O'Connor informed the court she had spoken with Anderson about the SPRCs, the constitutional right to counsel, the right to counsel of choice, and the court's role in providing adequate representation.

After this consultation, Anderson wanted O'Connor to serve as her counsel. Denes withdrew the motion for reconsideration. He informed the court that Anderson had not executed the motion because she no longer sought his representation. In court, Anderson affirmatively stated she no longer desired to retain Denes as her attorney.

5

Anderson now claims the trial court incorrectly interpreted SPRC 2 and denied her right to retained counsel of choice. But Anderson waived this claim.

A party may abandon or waive a constitutional claim by affirmatively withdrawing the related motion. State v. Valladares, 99 Wn.2d 663, 672, 664 P.2d 508 (1983). "Once a constitutional challenge has been affirmatively withdrawn or abandoned, the challenge will not be considered on appeal." In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) (abrogated on other grounds by State v. Gregory, __ Wn.2d __, 427 P.3d 621 (2018)).

Here, Anderson raised the issue of her Sixth Amendment right to counsel of choice in her initial motion for substitution, oral arguments, and in the motion for reconsideration. However, she abandoned her constitutional challenge to the court's decision when she withdrew the motion to reconsider and her request for Denes to represent her. She affirmatively stated her desire to withdraw the request for Denes's representation after consultation with an attorney appointed to advise her on her right to counsel of choice. At this point, Anderson had explicitly discontinued her request for Denes as her counsel of choice. Therefore, she has waived any constitutional claim related to the trial court's rejection of her motion to substitute Denes as counsel.

2. Request for "Furlough"

Anderson experienced significant turnover in representation and frequently expressed displeasure with appointed counsel. In February 2015, appointed counsel Colleen O'Connor and David Sorenson moved to withdraw, citing a complete breakdown in communication and irreconcilable conflict. At the

6

hearing on this motion, Anderson asked the court, "Can I just hire somebody myself? I don't like public defenders anymore. Illa was the only private one, and he was awesome. Why can't I just, you know, hire some private attorneys?" The trial court did not address this question, other than to inquire as to Illa's qualities.

After further discussion with the trial court and her attorneys, Anderson again asked, "Can't I just have a furlough so I can go hire a private attorney?"[2] The trial court did not respond to this request. The court subsequently denied counsel's motion to withdraw, noting "[t]he conflict that exists is of Ms. Anderson's own making; her refusal to cooperate is neither reasonable nor justified."

Anderson contends the trial court failed to address her requests to hire private counsel and violated her right to counsel of choice. However, the record demonstrates no such denial. The trial court did not make any ruling that denied or prevented Anderson from retaining counsel of choice. Nothing precluded Anderson from attempting to hire an attorney and moving to substitute counsel.

3. Request for Mediator

At the close of the State's case against Anderson, the parties held an in-court discussion as to whether Anderson would testify. Anderson wished to testify but her attorneys believed they could not effectively represent her during her testimony. As Anderson's attorneys attempted to explain their position to the

---

[2] Anderson had made a similar request in November 2009. She told the trial court, "If I was not in the jail, I could get a private attorney that's competent." She also said she wanted to work toward becoming a minister and helping troubled girls. The trial court responded, "This notion that you can get out of custody and pursue a minister's license and do all that while a death penalty case is looming in your future, it's just not a realistic view of the world right now."

court, she alleged they lied to her, verbally abused her, and committed malpractice. She claimed, "I need a mediator or a private attorney to add to the team so somebody can be my witness and tell you because you don't believe me." She also made the following request:

> [C]ould I at least have a PR so I can get a private attorney to come into these meetings with them so they can witness what they are doing, and then tell you. As a neutral party or even as a mediator they have mediators you can hire. Could I at least do that so I have the—I have the right to have the ability to prove to you what I'm saying. What's wrong with that? . . . . Like if I had a few hours PR I could get—I could go downtown, and I can get a mediator or a private attorney to sit in on these things.

Anderson asserted she had a right to release to bring somebody to prove her allegations. The trial court disagreed.

When the court asked Anderson if she wished to testify, she responded that she lacked counsel interested in unbiased representation. She elaborated, "I just want you to know I have a constitutional right for counsel of choice that I can hire with my own funds, and I just want you to know that you cannot deny somebody that." She continued to claim her right to counsel of choice had been violated. She requested to confirm on the record that the court denied her the ability to hire a professional mediator or a private attorney. The trial court responded, "Ma'am, we are at the end of this trial almost," made a record as requested, and attempted to determine whether Anderson wished to testify. Anderson eventually declined to testify, claiming she lacked effective assistance of counsel.

8

Anderson alleges this exchange constituted a violation of her right to counsel of choice. Once again, however, Anderson did not move for substitution of counsel. Instead, she requested release to hire a mediator or private attorney to add to her team in order to oversee her trial counsel. Anderson has not provided legal authority to support her position that the Sixth Amendment right to counsel includes the right to hire such a private mediator.

Furthermore, as indicated above, the Sixth Amendment right to counsel of choice is not absolute. Aguirre, 168 Wn.2d at 365. The trial court must balance the defendant's right to counsel of choice with the prompt and efficient administration of justice. Aguirre, 168 Wn.2d at 365. Anderson's request to hire a mediator or private attorney would have necessarily required a continuance. At this point, the State had rested its case and the defense did not anticipate calling any witnesses if Anderson chose not to testify. The parties were on the brink of closing arguments and submission to the jury for deliberation. The case had taken over eight years to come to trial and almost two months of testimony in front of the jury.[3] In light of these circumstances, any denial of a continuance to obtain private counsel was well within the trial court's discretion and does not amount to a violation of Anderson's right to counsel of choice.

B. Jury Selection Issues

On December 11, 2015, the trial court convened a pool of potential jurors for jury selection. At that time, the trial court swore in the potential jurors, introduced the parties, and announced the charges and aggravating

---

[3] The State charged Anderson in December 2007 and trial began January 2016.

9

circumstances. The court then administered a written questionnaire for completion by all potential jurors.

On December 17, 2015, the State, defense counsel, and Anderson appeared in open court and presented the trial court with a list of 217 jurors both parties agreed to excuse (agreed list). The list included the State's grounds for excusal, either hardship, cause, or both, but gave no indication of the defense's reasons. Defense counsel declined the invitation to add its reasons for excusal, noting, "We obviously agree on one grounds [sic] for excusals [sic] for each of the jurors. I don't think that it is necessary that we identify which grounds or both grounds are attributed to the defense or State." The State also offered to include email communication between the parties indicating the grounds for excusal. Defense counsel did not believe this was necessary as long as the trial court filed the agreed list.

After this discussion on the record, the trial court accepted and filed the agreed list to memorialize the agreement and excuse the jurors. The parties then reviewed additional lists of jurors put forward by one party for excusal without agreement by the other party. The trial court and parties examined the lists in open court and determined whether to excuse or retain the jurors at issue. The non-excused potential jurors reconvened on January 11, 2016 for voir dire.

Anderson claims the email communications between the prosecution and defense to arrive at the agreed list violated both her right to a public trial and right to be present at critical stages of trial. We disagree.

1. Public Trial Right

Under article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution, a criminal defendant has a right to a "public trial by an impartial jury." State v. Sublett, 176 Wn.2d 58, 70-71, 292 P.3d 715 (2012). The right to a public trial ensures fairness and reminds the prosecutor and judge of their responsibility and function, encourages witnesses to come forward, and discourages perjury. Sublett, 176 Wn.2d at 72.

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." Sublett, 176 Wn.2d at 71. Before determining whether a violation of a public trial right occurred, the court must first consider whether the proceeding at issue implicates the right. Sublett, 176 Wn.2d at 71. The defendant has the burden of proving that the public trial right attaches to the proceeding at issue. State v. Love, 183 Wn.2d, 598, 605, 354 P.3d 841 (2015).

Recent public trial cases establish a framework for determining whether the proceeding implicates the public trial right. See State v. Wilson, 174 Wn. App. 328, 335, 298 P.3d 148 (2013). First, the court may examine whether the proceeding "fall[s] within a specific category of trial proceedings that our Supreme Court has already established implicates the public trial right." Wilson, 174 Wn. App. at 335. If not, then the court applies the experience and logic test. Wilson, 174 Wn. App. at 335. Under this test:

> [T]he experience prong . . . asks "whether the place and process have historically been open to the press and general public." The logic prong asks "whether public access plays a significant positive

11

role in the functioning of the particular process in question." If the answer to both is yes, the public trial right attaches.

Sublett, 176 Wn.2d at 73 (internal citations omitted). The test allows the determining court to consider the actual proceeding, not merely the label given to the proceeding. Sublett, 176 Wn.2d at 73.

A claim of a violation of the right to public trial presents a legal issue subject to de novo review. State v. Jones, 185 Wn.2d 412, 421, 372 P.3d 755 (2016). Deprivation of the right to public trial constitutes structural error and is not subject to harmless error analysis. State v. Wise, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012).

Anderson correctly notes that the right to public trial encompasses jury selection. See Love, 183 Wn.2d at 605-06. Anderson contends the dismissal of some of the 217 potential jurors for cause implicated this right.

However, Anderson erroneously relies on the label of "jury selection" and fails to examine the actual "proceeding" at issue. In so doing, she overlooks a critical distinction—trial court involvement. The defense and prosecution reached the agreed list of 217 excused jurors without any participation by the trial court in the case at hand. In contrast, the public trial cases pertaining to jury selection involved trial court participation. See, e.g., Love, 183 Wn.2d at 605-07 (for cause challenges at the bench and silent peremptory challenges were not courtroom closures; "written peremptory challenges are consistent with the public trial right so long as they are filed in the public record"); Wise, 176 Wn.2d at 3 (public trial right was violated by in-chambers questioning of potential jurors); State v. Strode, 167 Wn.2d 222, 227, 217 P.3d 310 (2009) (questioning of prospective jurors in

12

chambers was a denial of right to public trial); State v. Slert (Slert I), 181 Wn.2d 598, 605-06, 334 P.3d 1088 (2014) (public trial right not implicated by in-chambers discussion of juror questionnaires where no evidence voir dire had been initiated); State v. Russell, 183 Wn.2d 720, 733, 357 P.3d 38 (2015) (work session conducted by trial court with defendant and attorneys to review questionnaires for hardship did not implicate the right to public trial); Jones, 185 Wn.2d at 426 (right to public trial not implicated by judicial assistant's random drawing of alternate jurors during recess); Wilson, 174 Wn. App. at 329-30 (right to public trial had not attached when bailiff excused two jurors on administrative grounds prior to voir dire); State v. Schierman, ___ Wn.2d ___, 415 P.3d 106 (2018) (public trial right did not attach to preliminary hardship juror excusal determination made during meeting between counsel and jury services manager).

As defined, the public trial right attaches to certain "interaction between the court, counsel, and defendants." Sublett, 176 Wn.2d at 71. Here, the interaction solely between the State and defense counsel fundamentally lacked the critical "court" component. Without court involvement, the email exchange between the attorneys does not amount to a court proceeding for the purposes of the right to a public trial. The only related court proceeding, the hearing to submit the list to the trial court, was public.

Furthermore, Anderson cannot satisfy the experience and logic test. Under the experience prong, Anderson must show "the place and process have historically been open to the press and general public." Sublett, 176 Wn.2d at

13

73. However, Anderson has not demonstrated that negotiations between attorneys have traditionally been open to the public. Nor has Anderson shown that such negotiations should be open to the press and general public. Anderson fails to demonstrate the right to public trial attached to the email exchange between prosecution and defense counsel. Therefore, we conclude counsel's review of the juror questionnaires and determination of agreed jurors for excusal did not violate Anderson's right to public trial.

### 2. Right to Be Present

Anderson contends the agreed list violated her right to be present for jury selection and requires reversal. The State claims the right to be present did not apply to the agreed list. We agree with the State.

A criminal defendant has a constitutional right to be present at all critical stages of a trial based on article I, section 22 of the Washington State Constitution and the Due Process Clause and the Sixth Amendment to the United States Constitution. State v. Irby, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). "The crux of a defendant's constitutional right to be present at all critical stages of the proceedings is the right to be present when evidence is being presented or whenever the defendant's presence has 'a relation, reasonably substantial,' to the opportunity to defend against the charge." State v. Bremer, 98 Wn. App. 832, 834, 991 P.2d 118 (2000) (internal citations omitted). This right "is not absolute; rather 'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'" Irby, 170 Wn.2d at 881 (quoting Snyder v. Massachusetts, 291 U.S.

14

97, 107-08, 54 S. Ct. 330, 78 L.Ed. 674 (1934)). For example, a defendant does not have the right to be present during in-chambers or bench conferences on legal matters that do not require the resolution of disputed facts. In re Pers. Restraint of Lord, 123 Wn.2d 296, 306, 868 P.2d 835 (1994).

Under art. 1, sec. 22, jury selection is "unquestionably a 'stage of the trial' at which a defendant's 'substantial rights may be affected,'" and absence from such proceedings violates a defendant's right to be present. Irby, 170 Wn.2d at 885 (quoting State v. Shutzler, 82 Wash. 365, 367, 144 P. 284 (1914)). Additionally, jury selection outside of the defendant's presence violates the right to be present under the due process clause of the Fourteenth Amendment. Irby, 170 Wn.2d at 884. This is particularly true where jurors are evaluated and dismissed for cause. Irby, 170 Wn.2d at 882-84. Discussion and ruling on for-cause challenges requires resolution of a factual component for which the defendant has a right to be present. Schierman, 415 P.3d at 121. However, "there is no constitutional right to presence at the noncourt, nonadversarial office visits to view juror declarations" for preliminary hardship determinations. Schierman, 415 P.3d at 120.

Whether a defendant's right to be present has been violated is a question of law reviewed de novo. Irby, 170 Wn.2d at 880. The right to be present is subject to harmless error analysis. Irby, 170 Wn.2d at 885-86. The State has the burden of proving harmlessness beyond a reasonable doubt. Irby, 170 Wn.2d at 886. To prove harmlessness, the State may show that the excused

15

jurors had no chance to sit on the jury.[4]  See Irby, 170 Wn.2d at 886.

Additionally, a lack of timely objection serves as strong evidence against

prejudicial error.  State v. Slert (Slert II), 186 Wn.2d 869, 879, 383 P.3d 466

(2016).

Here, the defense and the State agreed over email to excuse jurors after

empaneling of the jury had begun.  See Irby, 170 Wn.2d at 885.  The agreed list

included jurors dismissed for both hardship and cause.  Where evaluation of

individual jurors for fitness to serve on the specific case occurs, the decision-

making is clearly part of the jury selection process.  Irby, 170 Wn.2d at 882.  This

was the case in Irby, where an email exchange between the trial court and

parties was a portion of the jury selection process, "because this novel

proceeding did not simply address the general qualifications of 10 potential

jurors, but instead tested their fitness to serve as jurors in this particular case."

170 Wn.2d at 882.  Where this individual evaluation for fitness occurs, the

defendant has a right to be present.  Irby, 170 Wn.2d at 882.

However, as discussed above, this case differs from the facts of existing

case law because of the trial court's absence.  The discussion occurred solely

between defense and prosecution.  Therefore, evaluation of the jurors did not

happen as part of a court proceeding hearing, where fairness and justice would

be thwarted by Anderson's absence.  Rather, this part of jury selection occurred

---

[4] The Supreme Court has noted that this method, as defined in Irby, 170 Wn.2d at 886, does not establish the exclusive method to test whether the error was harmless.  State v. Slert (Slert II), 186 Wn.2d 869, 879 n. 4, 383 P.3d 466 (2016)

as a communication between prosecution and defense.[5] The parties agreed to the dismissals, such that the actual court proceeding was non-adversarial and the court had no need to resolve any factual issues. As defense counsel noted, "We obviously agree on one grounds [sic] for excusals [sic] for each of the jurors."

Furthermore, the agreed list itself did not dismiss the jurors. The parties appeared in open court and entered the agreed list on the record. That proceeding resulted in excusal of the 217 jurors. Anderson was present for that hearing, and was, therefore, present when the trial court excused the jurors. Thus, Anderson's right to be present was not violated.

Finally, if the agreed list amounted to a violation of the right to be present, any error was harmless beyond a reasonable doubt. The agreed list included only 12 potential jurors as excused solely for cause within the number range of jurors ultimately empaneled.[6] Examination of the juror questionnaires for these 12 members of the venire reveals clearly the causes underlying their dismissal.[7]

---

[5] Under the Rules of Professional Conduct, counsel has a duty of communication with the defendant. RPC 1.4. An attorney must "inform the client of any circumstance requiring the client's consent, reasonably consult with the client regarding the means by which the client's objectives will be accomplished, keep the client reasonably informed about the status of the matter, and promptly comply with any requests for information." In re Disciplinary Proceedings Against Van Camp, 171 Wn.2d 781, 803, 257 P.3d 599 (2011). Thus, counsel would have had a duty to apprise Anderson of the status of preparations for trial. Anderson has not raised an issue of counsel's failure to communicate or ineffective assistance of counsel based on a lack of communication concerning jury selection.

[6] The last juror seated was Juror 140. Within that range, the prosecution designated jurors 27, 31, 35, 39, 45, 46, 57, 100, 102, 125, 136, and 138 as excusals solely for cause. Anderson's counsel explicitly declined the opportunity to include the defense's reasons for each juror on the agreed list.

[7] Anderson argues that harmless error analysis requires a showing that all dismissed jurors in the range, regardless of the prosecution's designated reason, must be examined. However, the defendant does not have a right to be present during a preliminary hardship determination. Schierman, 415 P.3d at 120. Therefore, Anderson did not have a right to be present for discussion of the jurors dismissed for hardship.

Eight of the jurors demonstrated significant bias toward guilt, with one remarking, "I can drive them to Walla Walla . . . for the State." The four other jurors revealed limited ability to understand English, with one indicating an inability to communicate in English and leaving nearly the entire questionnaire blank. Given the obvious issues raised by these questionnaires, the State has demonstrated that none of the jurors dismissed only for cause would have served on the jury. Slert II, 186 Wn.2d at 879. The lack of any objection to the dismissal of these jurors reinforces the absence of prejudicial error. See Slert II, 186 Wn.2d at 879. As a result, any denial of Anderson's right to be present was harmless beyond a reasonable doubt.

C. Jury Instruction

Anderson contends the trial court initially instructed the jurors that they could consider the filing of charges as evidence of guilt, thereby violating her right to a fair trial. The State argues Anderson cannot raise this issue for the first time on appeal, the jury instructions as a whole properly instructed the jurors, and any error was harmless. We conclude the instruction at issue was erroneous but harmless.

The trial court addressed the pool of potential jurors and issued several preliminary instructions. Among these instructions, the trial court stated, "The charges in this case were initiated by the King County prosecuting attorney by filing a document called an information informing the defendant of the charges. You are not to consider the filing of the information or its contents *alone* as proof of the matters charged therein." (Emphasis added.) Anderson did not object to

18

this instruction. The trial court repeated its instruction to the juror pool prior to the start of voir dire on January 11, 2016. Again, the defense did not object.

After jury selection and prior to opening statements, the trial court instructed, "The evidence you are to consider consists of the testimony of the witnesses, and the exhibits admitted into evidence." At the conclusion of the evidence, the trial court issued its final written and oral jury instructions. The court instructed the jurors, "Keep in mind that a charge is only an accusation. The filing of a charge is not evidence that the charge is true. Your decision as jurors must be made solely upon the evidence presented during these proceedings."

The State argues Anderson cannot appeal this issue because she failed to object below. A party generally waives the right to appeal without a timely objection at trial. Kalebaugh, 183 Wn.2d 578, 583, 355 p.3d 253 (2015). Courts, however, will review manifest errors affecting a constitutional right. Kalebaugh, 183 Wn.2d at 583; RAP 2.5(a)(3). In such an instance, the appellant must identify an error of constitutional magnitude and demonstrate actual prejudice. State v. Gordon, 172 Wn.2d 671, 676-77, 260 P.3d 884 (2011). Actual prejudice requires a plausible showing that the error had practical and identifiable consequences. Kalebaugh, 183 Wn.2d at 584.

Here, we assume, without deciding, that the trial court's preliminary instruction amounts to manifest constitutional error. As such, harmless error analysis is required. See Kalebaugh, 183 Wn.2d at 585. The constitutional harmless error standard requires the State to prove harmlessness beyond a

19

reasonable doubt. State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015). "This stringent standard can be met if there is overwhelming evidence of the defendant's guilt that is not tainted by the error." Barry, 183 Wn.2d at 303.

An appellate court evaluates jury instructions in the context of all instructions given. State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Jury instructions must properly inform the jury of the applicable law, not mislead the jury, and permit each party to argue its theory of the case. Gordon, 172 Wn.2d at 677. An erroneous instruction amounts to harmless error if it did not lower the State's burden of proof or affect the outcome of the trial. Kalebaugh, 183 Wn.2d at 585. Jurors are presumed to follow the court's instructions. Kalebaugh, 183 Wn.2d at 586.

Here, the trial court provided multiple appropriate instructions informing the jury about what constituted evidence and their role in evaluating the evidence. The final instructions included the proper admonishment that the information was not proof of the charge and reminded the jurors to evaluate the evidence. The instructions as a whole correctly defined the State's burden of proof and the juror's role in examining the evidence put forth by the parties. Thus, the trial judge's correct instructions throughout the rest of the trial cured any potential prejudice. See Kalebaugh, 183 Wn.2d at 586.

The Washington Supreme Court found harmless error beyond a reasonable doubt in a trial court's erroneous preliminary instruction in Kalebaugh, 183 Wn.2d at 586. Despite an incorrect preliminary instruction on reasonable doubt, the Court concluded, "[W]e do not find it plausible to believe that the jury

retained these particular oral remarks made before jury selection three days earlier, ignored the other oral and written instructions, and applied the incorrect legal standard." Kalebaugh, 183 Wn.2d at 586. These remarks may apply even more so in this case, where the trial court made the preliminary remarks before jury selection and six weeks prior to the close of evidence.

Furthermore, the State presented the jury with overwhelming evidence of Anderson's guilt. During closing arguments, defense counsel told the jury that Anderson admitted to shooting her father, brother, and sister-in-law. "[T]he forensics supports her confession that she fired at Wayne and missed. That Joe killed her mother. That she skilled [sic] Scott. That they together killed Erica. And that Joe killed the children." Therefore, premeditation and accomplice liability became the main questions for the jury.

Anderson's confession demonstrated premeditation and accomplice liability. Anderson admitted she had prior thoughts of killing her family in the two weeks before the murders. She told detectives, "I was upset with my parents and my brother and that if the problems don't get resolved, I, my intent was definitely to kill them." She also stated, "Yes; it was premeditated; and yes, I was fed up with everything." And, "I went up there knowing I'd probably shoot these people." Additionally, she told McEnroe to shoot the children. "I said, we have to kill everybody."

Given the significant evidence of guilt, the elapsed time between the preliminary instructions and deliberations, as well as the correct instructions

provided during the proceedings, we conclude the erroneous jury instruction was harmless beyond a reasonable doubt.

D. Ineffective Assistance of Counsel

Anderson contends she was denied effective representation because competent counsel would have known the preliminary instruction violated due process and would have objected. While the trial court committed an instructional error, that error was harmless beyond a reasonable doubt and cannot support an ineffective assistance claim.

Effective assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, section 22 of the Washington Constitution. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To prevail on a claim of ineffective assistance of trial counsel, a defendant must prove both deficient performance and prejudice. State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). Establishing deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Prejudice sufficient to support a claim of ineffective assistance of counsel occurs when counsel's errors "were so serious as to deprive the defendant of a fair trial." Hendrickson, 129 Wn.2d at 78. The defendant must show a "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78.

A claim of ineffective assistance of counsel is a mixed question of law and fact that an appellate court reviews de novo. State v. Jones, 183 Wn.2d at 338-39.

As discussed above, the error in the preliminary jury instruction was harmless beyond a reasonable doubt. As a result, Anderson cannot demonstrate counsel's failure to object deprived her of a fair trial as needed to establish the prejudice and sustain an ineffective assistance claim.

E.  Death Penalty Statement

The Washington Supreme Court has established "it is error to inform the jury during voir dire in a noncapital case that the case is not a death penalty case." State v. Townsend, 142 Wn.2d 838, 840, 15 P.3d 145 (2001).[8] The Supreme Court does not distinguish based on whether the court, counsel, or a juror initiated the discussion of the death penalty. State v. Hicks, 163 Wn.2d 477, 487, 181 P.3d 831 (2008). In response to any mention of capital punishment, "the trial judge should state generally that the jury is not to consider sentencing." Hicks, 163 Wn.2d at 487. This strict prohibition ensures impartial juries and prevents unfair influences on jury deliberations. Townsend, 142 Wn.2d at 846. Despite the strict prohibition, discussion of the inapplicability of the death penalty may be harmless error. See State v. Mason, 160 Wn.2d 910, 931, 162 P.3d 396

---

[8] While acknowledging that this court may not disregard Townsend, the State contends that Townsend is incorrect, harmful, and should be overruled. The State properly notes that Washington Supreme Court precedent binds this court and failure to follow directly controlling authority is error. See 1000 Virginia Ltd. Partnership v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006).

(2007); <u>Hicks</u>, 163 Wn.2d at 488; <u>State v. Clark</u>, 187 Wn.2d 641, 655, 389 P.3d 462 (2017).

Here, the trial court was aware of potential <u>Townsend</u> issues from the time the State declined to pursue the death penalty. The trial court determined not to tell potential jurors anything about the death penalty other than the trial court's inability to answer questions on the issues and that it would not be a subject of inquiry.

The issue of capital punishment arose early in voir dire, when one prospective juror said she was against capital punishment and did not know if she could serve on a case involving capital punishment. The prosecutor noted there had been no mention of the death penalty in the case, but inquired whether not knowing whether the case involved the death penalty might affect the ability to serve on the jury. The court recorded the numbers of the potential jurors who indicated a possible issue. A few jurors continued discussing the issue of the death penalty. In response, the trial court stated as follows:

> I will tell you right now this is a very complicated matter for me, and I will be very candid with you. The current state of the case law in Washington, thanks to Supreme Court decisions, is that I can't advise this jury whether or not the death penalty is involved. Period. It's beyond the scope of what I can talk to you about. What I think I can tell you is that we still have a death penalty in the State of Washington.

Later in voir dire, juror 118 asked about the process in death penalty cases:

> I know you can't speak to if this capital punishment is on this case, but in cases where it is is [sic] that decision made by the jury or by the judge? I know the jury decides guilt [sic] or not guilty, but does the Judge decide the sentence or the jury?

24

The trial court responded that the jury decides the sentence. In a separate exchange, the State answered a juror question by explaining, "I believe at the end of this case you will be instructed something along the lines as this, you will have nothing to do with punishment in the event of a conviction in this case." The court issued an instruction to this effect in the final jury instructions.

The defense then asked the trial court to discharge the prospective jurors based on the discussion of the death penalty. The defense argued that the trial court's answer, the State's comment, and the anticipated final jury instruction allowed prospective jurors to conclude that the case did not involve the death penalty. The trial court denied the motion.

Citing Townsend, Anderson contends the trial court violated the prohibition against informing the jury that the case is noncapital. Anderson also cites Hicks, 163 Wn.2d at 482-83, and Mason, 160 Wn.2d at 929-30 for support. But in these three cases, the trial court explicitly informed the jury the case did not involve the death penalty. See Townsend, 142 Wn.2d at 842 ("This is not a case in which the death penalty is involved and will not be a consideration for the jury."); Mason, 160 Wn.2d at 910 ("[T]his is not a capital case. In other words, this case does not involve a request for the death penalty."); Hicks, 163 Wn.2d at 483 ("[t]his is not a death penalty case"). Recently, in State v. Clark, the Court found error where the State informed the jury that it did not seek the death penalty in the case. 187 Wn.2d at 647. While Clark differs in that the State improperly provided the information to the jury, the statement again unambiguously informed the venire that the death penalty did not apply.

25

The Townsend errors identified by the Washington Supreme Court have thus far pertained to explicit statements that the death penalty did not apply. Those differ significantly from the case at hand. Here, neither the trial court nor the State commented directly on the applicability of the death penalty in the particular case. Instead, the trial court provided a legally accurate, general description of the sentencing process in capital cases. While a particularly attentive juror could have surmised through inference that the death penalty did not apply to Anderson's case, the jury was not specifically informed about the inapplicability of capital punishment.[9] This does not amount to a violation of Townsend.

Finally, even if the trial court violated the Townsend prohibition, any error was harmless. As discussed above, overwhelming evidence in the record supports the conviction. A guilty verdict was likely even without a Townsend violation. See Hicks, 163 Wn.2d at 488.

F. Cumulative Error

Anderson claims cumulative error requires reversal. "Cumulative error may warrant reversal, even if each error standing alone would otherwise be

---

[9] During individual voir dire, juror 118 suggested the defense's concerns might have been valid. "[C]orrect me if I'm wrong, but the Judge already said we are not deciding the sentencing. . .you explicitly said—someone asked if we would be involved in punishment, and you said no, the jury's not going to be involved in the sentencing. That would occur later." After this exchange, the State explored the issue further. "[A]s you sit here now do you know whether this is or is not a death penalty case?" Juror 118 responded, "I don't know. I don't know for a fact, no. I made some assumptions based on statements that I heard from both parties. It did not seem to me it was."

In subsequent individual voir dire with the seven potential jurors who expressed concern that not knowing whether the case involved the death penalty would impact their ability to be fair and impartial, the State explored whether anyone had concluded that the case was non-capital. All responded they did not know whether the case involved the death penalty.

considered harmless." State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Without error, the cumulative error doctrine does not apply. Clark, 187 Wn.2d at 655. Cumulative error also does not apply where the errors are few and have little or no effect on the outcome of the trial. Weber, 159 Wn.2d at 279.

Because Anderson has only established the single instructional error, which was harmless beyond a reasonable doubt, the cumulative error doctrine is inapplicable.

Affirmed.

_____Chun, J._____

WE CONCUR:

_____Leach, J._____          _____Dwyer, J._____