[No. 24713-5-II. Division Two. January 26, 2001.]

THE STATE OF WASHINGTON, *Appellant*, v. CRAIG STEPHEN BURDEN, *Respondent*.

---

[59] *See* RCW 9A.44.130(9)(a).

508

John W. Ladenburg, Prosecuting Attorney, and Michael L. Sommerfeld, Deputy, for appellant.

David W. Murdach, for respondent.

WANG, J.[*] — When Craig Burden was arrested in 1993 for driving under the influence, his coat pocket contained a bag of cocaine. His first trial in 1994 for possession of a controlled substance resulted in a hung jury. The trial court dismissed charges, but we reversed. On the date the case was set for retrial in 1998, the exhibits were missing from the court clerk's office. The key determination is whether the lost evidence was "materially exculpatory" or merely "potentially useful." The trial court determined that the lost exhibits were materially exculpatory and dismissed the charge with prejudice. Seven years after the arrest, the State has appealed to this court for a second time. Because we agree with the trial court that the exhibits were materially exculpatory, we affirm the dismissal of the charge.

## FACTS

Burden had just left a tavern at about 2 A.M. on October 25, 1993, when the state patrol stopped him on his motorcycle for speeding and arrested him for driving under the influence. In a search incident to arrest, the police found a paper bag containing approximately 110 grams (four ounces) of cocaine in the pocket of the coat Burden was wearing.

At his trial in February 1994, Burden presented a defense of unwitting possession. It was very cold on the night of the arrest, and Burden was riding his motorcycle. He arrived at the Summit Lounge wearing a T-shirt, two sweatshirts, and motorcycle gloves, but no coat. He gave one of his sweatshirts to a girl friend who was cold. He claimed that another friend handed him a coat as he left the Summit Lounge, that he wore the coat for only 10 or 11

---

[*] Judge Wang is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150(2).

minutes before he was arrested, and that he had no knowledge of the bag in the pocket prior to his arrest. The arresting officers testified that they saw a bulge in the pocket of the coat and the twisted end of a paper bag sticking out of the pocket at the time of arrest. The paper bag contained two plastic baggies of cocaine.

The court admitted as exhibits the coat, sweatshirts, and gloves that Burden wore the night of the arrest. Both parties jointly offered the coat, which was marked as a prosecution exhibit. The defense offered the sweatshirts and gloves. In a pretrial ruling on a motion in limine, the 1994 trial court disallowed a photograph showing Burden wearing the coat at the scene of arrest. In the photograph, Burden is seated in the back of a patrol car with his hands handcuffed behind his back and is sticking out his tongue at the camera. The court found that the photograph was more prejudicial than probative, especially in light of the availability of the actual coat.

Witnesses for both parties testified about the coat. The coat was a "noninsulated blue jean type jacket" with an emblem on the front and a "fairly good-sized" emblem on the back.[1] Clerk's Papers at 45 (Findings of Fact 14); Report of Proceedings (Feb. 23, 1994) at 8, 39; Report of Proceedings (Feb. 24, 1998) at 8. The arresting officers did not take the coat into evidence, recognized the emblem on the front, but did not recall the emblem on the back. The jury had an opportunity to observe whether the coat fit Burden when he tried it on in open court. During closing arguments, defense counsel pointed out to the jury and argued that a different person's name was written in the coat.[2]

---

[1] The record does not contain a description of the emblems.

[2] In the record before this court, there is no direct testimony that there was a name in the coat. The name ("Rhea or Rheo" in the Findings of Fact and variously transcribed phonetically as "M. Reha or Reho" or as "Mr. Arrea") was discussed in closing argument at the first trial and during defense counsel's argument in support of the motion to dismiss. The State admits that the coat "had a nickname inscribed in it that was not defendant's name." Appellant's Reply Br. at 8.

The 1994 trial ended in a hung jury and the court declared a mistrial.[3]

The case was scheduled for a new trial in September 1998. After the jury was impaneled, it was discovered that the exhibits from the first trial were missing from the clerk's office. A second mistrial was declared.

Burden moved for dismissal of the charge based on a violation of due process resulting from the State's destruction of evidence. In 1999, the second trial court[4] concluded that the appearance and physical nature of the missing exhibits assisted the jury in assessing the credibility of Burden and his witnesses. It concluded as a matter of law that the missing exhibits were materially exculpatory and that Burden would be unable to obtain comparable evidence by other reasonably available means. The case was dismissed with prejudice.

## ANALYSIS

### I. Missing Exhibits Were Materially Exculpatory

We first determine whether the lost exhibits meet the standard of "material exculpatory evidence" or if they were merely "potentially useful." Under both the state and federal constitutions, due process in criminal prosecutions requires fundamental fairness and a meaningful opportunity to present a complete defense. *State v. Wittenbarger*, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994) (citing *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). To comport with due process, the prosecution has a duty not only to disclose material exculpatory evidence, but it also has a related duty to preserve the evidence. *Wittenbarger*, 124 Wn.2d at 475. If the evidence meets the standard as materially exculpatory, criminal charges against the defendant must be dismissed if the

---

[3] The court later dismissed the case on double jeopardy grounds, but the Court of Appeals reversed the dismissal and reinstated the case.

[4] Hereafter called the "dismissing court." Judge Bryan E. Chushcoff was the dismissing court judge. Judge Brian M. Tollefson presided over the first trial.

State fails to preserve it. *State v. Copeland*, 130 Wn.2d 244, 279, 922 P.2d 1304 (1996) (citing *Wittenbarger*, 124 Wn.2d at 475). A trial court's determination that missing evidence is materially exculpatory is a legal conclusion which we review de novo. *See United States v. Manning*, 56 F.3d 1188, 1197-98 (9th Cir. 1995).

■ Evidence is materially exculpatory only if it meets a two-fold test: (1) its exculpatory value must have been apparent before the evidence was destroyed, and (2) the nature of the evidence leaves the defendant unable to obtain comparable evidence by other reasonably available means. *Wittenbarger*, 124 Wn.2d at 475 (citing *Trombetta*, 467 U.S. at 489). If the evidence does not meet this test and is only "potentially useful" to the defense, failure to preserve the evidence does not constitute a denial of due process unless the criminal defendant can show bad faith on the part of the State. *Wittenbarger*, 124 Wn.2d at 477 (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)).

In most cases involving the failure to preserve evidence,[5] courts have had to speculate about the exculpatory value of missing evidence. Here, the dismissing court had an opportunity to review transcripts showing how the evidence initially was presented at trial and argued to the jury.

Burden's coat was a key piece of evidence. At trial, Burden based his defense of unwitting possession on his claims that the coat did not belong to him and that he did not know the drugs were in the pocket. Burden argued that the fit and appearance of the coat were important factors in determining its ownership.

In granting the motion to dismiss, the dismissing court considered the role of the exhibits in the 1994 trial and noted that "this was the evidence critical to the defense of

---

[5] Almost all of these cases involve evidence that was lost or destroyed before trial and was found not to be materially exculpatory. *See, e.g., Copeland*, 130 Wn.2d 244 (DNA extracted from crime scene discarded after testing); *Wittenbarger*, 124 Wn.2d 467 (maintenance and repair records of DataMaster breath test machines not recorded); *Trombetta*, 467 U.S. 479 (breath samples of DWI defendants not preserved).

unwitting possession." Report of Proceedings (Feb. 18, 1999) at 57. Burden relied heavily on the exhibits to support his defense in the trial; the dismissing court observed that without them he would be "trying this case with one hand tied behind his back." Report of Proceedings (Feb. 18, 1999) at 58. Burden would be unlikely to receive a fair trial if he had to present the same defense that led to a hung jury without the physical evidence that supported his defense. The trial court correctly determined that the exculpatory value of the exhibits was apparent before the evidence was lost.

However, the failure to preserve evidence does not violate the defendant's due process rights if the defendant can obtain comparable evidence by other reasonably available means. *Wittenbarger*, 124 Wn.2d at 475. The State argues that a substitute coat, stipulations about the coat, testimony that the coat was not Burden's, and the photograph[6] of Burden wearing the coat are evidence comparable to the actual coat. It also argues that comparable evidence is available for the other missing exhibits.

The fit of the coat and the name in it raised issues of ownership. Burden argues this proved the coat belonged to someone else, thus supporting his defense of unwitting possession. Whether or not Burden could feel the paper bag containing the cocaine in the coat pocket also relates to this defense. The arresting officer testified that the coat fit Burden tightly and that the bag fit snugly in the pocket. The State argues that the tight fit proves it was impossible for Burden *not* to have noticed the drugs in the pocket. The State admits that the coat had a name in it that was not Burden's. The State is willing to stipulate that the coat had an emblem on the back that the officers did not recognize. Burden argues that the officers' failure to recall the emblem on the back also diminishes their credibility.

---

[6] The State argues that this court should not be bound by the trial court's ruling of inadmissibility of the photograph, since the outcome of the balancing test of ER 403 may be different now that the actual coat is not available. We are not persuaded that the balance would be struck differently.

There was no testimony at the trial regarding some of the specifics about the coat, since the coat was physically present as an exhibit. Even with a stipulation, a jury would have no foundation to determine whether the thickness and fit of a substitute coat were the same as the original. The dismissing court determined that the partial photograph, which does not show the other person's name or the emblem, does not constitute evidence comparable to the actual coat, even with a series of stipulations. It concluded that a substitute coat would create credibility issues about the accuracy of the substitute and that the photograph was inadequate because it did not show the entire coat. It also concluded that prior testimony would not remedy these problems. We agree.

Burden also claims that the thickness of his gloves and sweatshirt made it impossible to feel anything in the pocket, thus supporting his claim of unwitting possession. The State argues that substitute garments would allow the jury to determine whether the thickness of the garments would support Burden's claim. There are no photographs of the gloves or sweatshirts, nor any testimony about their precise thickness, so there would be no foundation to determine whether the substitute garments were the same as the original garments. The dismissing court properly determined that substitute garments would raise credibility issues that would prejudice Burden and that there is no comparable evidence that is reasonably available to him.

The missing evidence is materially exculpatory because its exculpatory value was apparent before the exhibits disappeared and there is no comparable evidence that is reasonably available to Burden. Therefore, the trial court did not err when it dismissed the charge.

Because we find that the evidence was materially exculpatory and not merely "potentially useful," we need not determine whether the State acted in bad faith. Due process "makes the good or bad faith of the State irrelevant" for material exculpatory evidence, as opposed to evidence

which is merely "potentially useful." *Youngblood,* 488 U.S. at 57-58.

## II. Prosecutorial Authority

The State also argues that the test for materially exculpatory evidence does not apply because the evidence was lost by the county clerk's office, not through the authority of the prosecutor. The state constitution provides that the county clerk is "clerk of the superior court." WASH. CONST. art. IV, § 26. The State raises for the first time on appeal the issue of whether the actions of the superior court clerk may be imputed to the prosecutor.

Because this issue was not properly raised before the dismissing court, we need not consider it. RAP 2.5(a). In his motion to dismiss, Burden argued that the clerk is an agent of the State. The State did not dispute that in its response, although it did make a passing reference that "[t]he State should not be penalized for the inadvertent misplacement of the blue jean jacket *by a non-law enforcement officer.*" Clerk's Papers at 38 (emphasis added). At oral argument on the motion before the dismissing court, Burden argued: "The state breached its statutory responsibilities. I'm not saying the prosecutor's office did, but a *branch of the state,* which is the clerk's office, under our constitution." Report of Proceedings (Feb. 18, 1999) at 43 (emphasis added). The prosecution responded that the first determination was whether the evidence was materially exculpatory, then the next stage was: "Was there bad faith *on behalf of the state*[?]" Report of Proceedings (Feb. 18, 1999) at 47 (emphasis added). This was not sufficient to raise the issue to the trial court.

Affirmed.

MORGAN and HOUGHTON, JJ., concur.