**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 80561-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT NEW, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Robert New was convicted by jury of four counts of rape of a child in the first degree. New appeals his judgment and sentence arguing that: (1) the trial court erred in denying his motion to dismiss after the State failed to preserve material exculpatory evidence, (2) the trial court erred by not dismissing the prosecution following deprivation of his constitutional right to a speedy trial, (3) the trial court violated his constitutional right to be present by addressing written jury questions in his absence; (4) the prosecution committed misconduct during its closing argument, (5) cumulative error deprived him of a fair trial, and (6) the trial court erred by imposing community custody supervision fees. We remand to the superior court to strike the supervision fees. We otherwise affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

New and Alexis Ham were in a relationship from 1994 to September 1995 while residing in Canada. Their daughter, J.T., was born on March 18, 1996. New saw J.T. briefly in her infancy and then did not see her again until she was five years old. In the meantime, New married Heather New.[1] A dispute over residential time with J.T. ensued between New and Ham. After increasing visitations, New was given full-time residential care in October 2003; J.T. was seven years old. Shortly after, New, Heather, and J.T. moved from Canada to Washington.

In summer 2007, 11-year-old J.T. spent two months with Ham in Canada. Early morning on July 29, 2007, J.T. told Ham that she had been "molested" on numerous occasions by New beginning at the age of six. Ham called Royal Canadian Mounted Police (RCMP) then took J.T. to the police station. The RCMP interviewed Ham and J.T. In the interview, J.T. disclosed that her father sexually abused her in both Surrey, British Columbia and Redmond, Washington. On August 22, 2007, J.T. had a medical exam at the HEAL[2] clinic in Surrey, British Columbia. The exam was conducted by Dr. Joan Fujiwara and included colposcopy photographs.

The RCMP investigation was forwarded to the Redmond Police Department in October 2007 and reviewed by Detective Patty Neorr. In August 2008, the State charged New by information with three counts of first degree rape of a child-domestic violence. New did not appear for an arraignment scheduled for September 3, 2008.[3]

---

[1] We refer to Heather by her first name for clarity. We intend no disrespect.
[2] Health Evaluation Assessment and Liaison.
[3] The record before us does not indicate that New was aware of the charges or the arraignment.

On November 1, 2012, the State amended the information, adding a fourth count of first degree rape of a child-domestic violence. According to the amended information, the State believed New was living in Canada and had been convicted of financial fraud in 2007 and sentenced to 15 months of house arrest. Also according to the amended information, the State was preparing to extradite New to the United States. The record does not explain what measures the State took to extradite or prosecute New between 2008 and 2012.

In 2012, the State began negotiations with Canada. In 2015, Canadian authorities detained New on the Washington charges. New initially opposed extradition, but Canada eventually delivered New to Washington in April 2018.

After over 20 continuances, the trial commenced in July 2019. New objected to some continuances, but did not move to dismiss on speedy trial grounds. On July 16, 2019, New moved to dismiss for government mismanagement under CrR 8.3(b) because the State lost the colposcopy photos taken during the August 2007 medical exam in Canada. The trial court denied the motion, but excluded the State's witness slated to introduce the colposcopy photos.

Trial commenced in July 2019, but a mistrial was declared after defense counsel fell ill. The second trial began immediately. The parties did not relitigate pretrial motions.

The jury found New guilty as charged. The trial court imposed an indeterminate sentence of 285 months minimum to life.

New appeals.

ANALYSIS

A. Lost Colposcopy Photos

New argues that the trial court erred in denying his CrR 8.3(b)[4] motion to dismiss following the State's failure to preserve the August 2007 colposcopy photos that he claims were materially exculpatory evidence. We disagree.

We review the denial of a motion to dismiss under CrR 8.3(b) for abuse of discretion. State v. Athan, 160 Wn.2d 354, 375, 158 P.3d 27 (2007). To prevail on a motion to dismiss under CrR 8.3(b), the defendant must first show arbitrary action or government misconduct. "Absent a showing of arbitrary action or governmental misconduct, a trial court cannot dismiss charges under CrR 8.3(b)." State v. Michielli, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). The second necessary element a defendant must show before a trial court can dismiss charges under CrR 8.3(b) is prejudice affecting the defendant's right to a fair trial. Michielli, 132 Wn.2d at 240.

Under the due process clause of both the U.S. Constitution and Washington State Constitution, criminal defendants have a right to the preservation and disclosure of material exculpatory evidence in the State's control. U.S. CONST. amend. XIV; CONST. art. I, § 3; State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). The State has a duty to both preserve and disclose "materially exculpatory" evidence. State v. Burden, 104 Wn. App. 507, 511, 17 P.3d 1211 (2001). If evidence is materially exculpatory and not preserved, criminal charges against the defendant must be

---

[4] CrR 8.3(b) provides, in relevant part:

The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

dismissed. <u>Wittenbarger</u>, 124 Wn.2d at 475. In contrast with exculpatory evidence, the failure to preserve evidence that is only "potentially useful" is not a due process violation unless the State acted in bad faith while failing to preserve the evidence. The defendant bears the burden of establishing that the State acted in bad faith. <u>Wittenbarger</u>, 124 Wn.2d at 477. "A trial court's determination that missing evidence is materially exculpatory is a legal conclusion which we review de novo." <u>Burden</u>, 104 Wn. App. at 512.

To be material exculpatory evidence, "the evidence must both possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Wittenbarger</u>, 124 Wn.2d at 475. A showing that evidence might exonerate the defendant is not sufficient. <u>Wittenbarger</u>, 124 Wn.2d at 475. In contrast, potentially useful evidence is evidence that "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

In the course of her investigation, Detective Neorr contacted the HEAL clinic in Surrey, British Columbia, and requested that they send her the colposcopy photos taken during J.T.'s August 22, 2007 exam by Dr. Fujiwara. Detective Neorr retrieved the photos and delivered them to Dr. Sugar at the Harborview Center for Sexual Assault and Traumatic Stress. Detective Neorr asked Dr. Sugar to review the Canadian medical report and photos and provide her opinion. On August 1, 2008, Dr. Sugar told Detective Neorr that she "did not see the abnormality described in Canada's medical report, but that didn't mean it wasn't there" and that she would have preferred video.

Dr. Sugar died in 2013. The colposcopy photos were subsequently lost. New argues the colposcopy photos taken by Dr. Fujiwara were materially exculpatory because Dr. Sugar opined that they did not show an abnormality consistent with sexual abuse. To the contrary, the missing colposcopy photos, combined with Dr. Fujiwara's opinion after conducting J.T.'s examination, was inculpatory—not exculpatory. While Dr. Sugar opined that she did not see the abnormality described by Dr. Fujiwara, she also opined that it didn't mean that it wasn't there. At best, Dr. Sugar's statement regarding the missing photos might have been potentially useful for cross-examination of Dr. Fujiwara.

New compares his case to Burden. In Burden, the State lost the coat of a defendant charged with a drug crime. 104 Wn. App. at 510-11. Burden's defense was that the coat was a friend's, along with the drugs inside. He claimed the coat had the friend's initials written on the tag. The court concluded the lost coat was materially exculpatory evidence because it provided affirmative evidence establishing Burden's innocence and was "critical to the defense." Burden, 104 Wn. App. at 510, 512-13. But in this case, unlike the coat, the colposcopy photos did not provide affirmative evidence to establish New's innocence. To the contrary, the photos along with Dr. Fujiwara's testimony strongly favored the State. While New may have been able to find a witness to replace Dr. Sugar and agree that the photos did not show signs of trauma or were inconclusive, it would not have demonstrated his innocence.

Under CrR 8.3, it is also improper to dismiss a criminal case absent a finding of prejudice to the defendant. Michielli, 132 Wn.2d at 240. After correctly concluding that the missing colposcopy photos were not materially exculpatory, the trial court offered New two choices to cure the prejudice: exclusion of Dr. Fujiwara's opinion and all

physical evidence or a stipulation from the State that its expert disagreed with Dr. Fujiwara's opinion. New opted to exclude all physical evidence and opinion concerning the colposcopy photographs and exam. The exclusion of all physical evidence and Dr. Fujiwara's opinion cured any potential prejudice to New. Because the trial court was able to cure any prejudice, and New was able to argue a lack of physical evidence to present reasonable doubt, the lost colposcopy photos fail to rise to the level of materially exculpatory evidence and do not justify dismissal.

B. Right to Speedy Trial

New argues that this court should reverse his conviction and dismiss the case because his constitutional right to a speedy trial was violated. We disagree.[5]

We review an alleged violation of a defendant's Sixth Amendment right to a speedy trial de novo. State v. Ollivier, 178 Wn.2d 813, 827, 312 P.3d 1 (2013). Washington uses the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether a constitutional speedy trial violation has occurred. Ollivier, 178 Wn.2d at 827. "The analysis is fact-specific and 'necessarily dependent upon the peculiar circumstances of the case.'" Ollivier, 178 Wn.2d at 827 (quoting Barker, 407 U.S. at 530-31). Among the nonexclusive factors to be considered are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530. "None of these factors is sufficient or necessary to a violation." Ollivier, 178 Wn.2d at 827.

---

[5] In its response brief, the State argues that New failed to assert below the violation of his right to a speedy trial for the period from 2008 to 2012. We disagree. While limited, in a letter to the trial court, New argued that the State's delay from 2008 onward was prejudicial and denied him the right to a speedy trial.

As a threshold inquiry to the Barker analysis, a defendant must show that the length of the delay crossed the line from ordinary to presumptively prejudicial. Ollivier, 178 Wn.2d at 827-28; Doggett v. United States, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The State correctly concedes here that the delay of 11 years between the initial charges and trial satisfies the threshold finding of prejudice under Barker.

The first of the Barker factors is the length of the delay. The record is silent in respect to the State's and New's actions between 2008 and 2012. The State, however, did not begin extradition proceedings until 2012 and it took another 6 years before New was arraigned in Washington. The length of delay, particularly where there is no information explaining the State's initial four year delay weights against the State.

The second Barker factor examines the reason for the delay. We look "to each party's responsibility for the delay, and different weights are assigned to delay, primarily related to blameworthiness and the impact of the delay on defendant's right to a fair trial." Ollivier, 178 Wn.2d at 831. "At one end of the spectrum is the situation where the defendant requests or agrees to the delay and therefore 'is deemed to have waived his speed trial rights as long as the waiver is knowing and voluntary.'" Ollivier, 178 Wn.2d at 831 (quoting State v. Iniguez, 167 Wn.2d 273, 284, 217 P.3d 768 (2009)). "At the other end of the spectrum, if the government deliberately delays the trial to frustrate the defense, this conduct will be weighted heavily against the State." Ollivier, 178 Wn.2d at 832.

Again, the State fails to explain the four-year delay between initially charging New and seeking extradition. Once extradition proceedings began in 2012, subsequent

delay appears to be the result of New exercising his right to oppose extradition. We conclude that reason for the 11-year delay between the initial charges and arraignment in Washington is evenly weighted between the State and New.[6]

The third Barker factor requires us to consider the extent at which the defendant asserts his speedy trial right. Iniguez, 167 Wn.2d at 284. Essentially, the defendant is more likely to complain the more egregious the violation is. Barker, 407 U.S. at 531. While the defendant's assertion is entitled to strong evidentiary weight, the court must balance this in light of his other conduct. Barker, 407 U.S. at 531-32; United States v. Loud Hawk, 474 U.S. 302, 314, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986). Here, New never asserted a violation of his rights to a speedy trial from the time extradition proceedings began, through his arrest in Canada in 2015, and through his arraignment in Washington in April 2018. He began objecting to trial continuances, asserting a violation of this right, in September 2018, but did not do so in litigating extradition, nor in reflection on the time between charges and the beginning of extradition. New simply did not assert this right for years after knowing of the charges and his rights. The third factor weighs against New.

Finally, the last factor of the Barker test examines the prejudice to the defendant as a result of the delay. Iniguez, 167 Wn.2d at 284. A defendant may be relieved of his burden to establish prejudice. However, "presumed prejudice is recognized only in the case of extraordinary delay, except when the government's conduct is more egregious

---

[6] Additionally, New asserts a violation of his speedy trial rights due to the trial court's grant of over 20 continuances. However, these continuances concerned trial transcripts, Canadian reports, and missing witnesses. New conceded to the necessity of many of these continuances. These continuances were reasonably justified and should not factor into the analysis. Barker, 407 U.S. at 531.

than mere negligence." Ollivier, 178 Wn.2d at 842 (quoting WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 18.2(3) (3d ed. 2007)). In deciding what is extraordinary enough to constitute presumption, the court considers the period between the time of the indictment and the time the government began diligently pursuing the charge. Ollivier, 178 Wn.2d at 842. Absent bad faith, the average for presumed prejudice is a post-indictment delay of at least five years. Ollivier, 178 Wn.2d at 843; United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir. 2003) (collecting cases). In this case, the post-indictment delay is approximately four years, therefore, there is no presumed prejudice.

An assessment of prejudice involves: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility the defense will be impaired by dimming memories and loss of exculpatory evidence. Doggett, 505 U.S. at 654; Barker, 407 U.S. at 532. Additionally, a defendant must generally "establish actual prejudice before a violation of the constitutional right to a speedy trial will be recognized." Ollivier, 178 Wn.2d at 840.

First, New did not experience oppressive pretrial incarceration. He was allegedly unaware of the charges for four years and then released to a bail supervisor while fighting extradition in Canada. New's incarceration between arraignment in April 2018 and trial in August 2019 does not constitute an oppressive pretrial incarceration. Ollivier, 178 Wn.2d at 844 (holding a pretrial incarceration of two years is not oppressive on its face).

Second, New does not argue anxiety and concern as prejudice on appeal. Third, the delay did not diminish the defense. New argues that the delay caused the loss of

two witnesses, his in-laws, the loss of colposcopy photos, and death of the expert, Dr. Sugar. However, as previously addressed, the loss of the colposcopy photos and death of Dr. Sugar did not prejudice New because the trial court struck all physical evidence, removing any possible prejudice. Therefore, New failed to establish actual prejudice resulting from the delay.

Overall, we conclude that the Barker factors weigh in favor of the State and New's speedy trial rights were not violated.

## C. Right to Be Present

New argues that the trial court violated his right to be present when it answered a jury question, after conferring with counsel, in his absence. We disagree.

A criminal defendant has the constitutional right to be present at trial. U.S. CONST. amend. XI, XIV; CONST. art. I, § 22. This includes the right to be present at all critical stages of the trial. Rushen v. Spain, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); State v. Sublett, 156 Wn. App. 160, 182, 231 P.3d 231 (2010), aff'd on other grounds, 176 Wn.2d 58, 292 P.3d 715 (2012). Also, the defendant has a due process right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). In Washington, the right to be present means the right "to appear and defend in person and by counsel . . . at every stage of the trial when his substantial rights may be affected." CONST. art. I, § 22; State v. Irby, 170 Wn.2d 874, 885, 246 P.3d 796 (2011). A defendant's right to be present is a question of law reviewed de novo. State v. Slert, 186 Wn.2d 869, 874, 383 P.3d 466 (2016).

-11-

Shortly after the jury began deliberations, the trial court gave counsel their options for responding to jury questions. The court explained, "[y]ou know, my practice is I follow whatever method you like. I never respond to jurors without talking to you first, but I can talk to you over the phone, or I can talk to you here in court, . . . some combination thereof, whatever works." Neither party objected nor took issue with the court's suggestion. Later that day, the jury sent two written questions: "[w]as evidence excluded because it took place outside of the time frame in question or because it was from outside the Court's jurisdiction?" and "[d]oes the Court have jurisdiction only over acts committed inside its geographic jurisdiction?"

The next morning, the court consulted with counsel over the phone. It then sent the jury a response, "Please [re-read] and follow your instructions, including instruction No. 1, which tells you the evidence you are to consider during your deliberations consists of the testimony you have heard from witnesses and exhibits I have admitted during the trial. If the evidence was not admitted, then you are not to consider it in reaching your verdict." On August 16, 2019, the Court read the questions and response in open court with New present prior to hearing the jury's verdict. New did not object when informed that the court gave counsel the option to discuss issues over the phone and did not object to the court's response when read to him prior to the jury's verdict.

If a defendant fails to timely object to an alleged violation of the right to be present, he waives appellate review. Slert, 186 Wn.2d at 875; State v. Jones, 185 Wn.2d 412, 426-27, 372 P.3d 755 (2016). In Slert, the court conducted some portion of jury selection outside of the defendant's presence. 186 Wn.2d at 873. And in Jones, the court selected alternate jurors in the defendant's absence. 185 Wn.2d at 426-27. In

both cases, the courts determined that the defendants had a right to be present, but they waived that right because each failed to timely object to the violations at trial. Slert, 186 Wn.2d at 875-76; Jones, 185 Wn.2d at 426-27. Conversely, prompt objection may be excused based on particular facts of the case. Slert, 186 Wn.2d at 875-76; Irby, 170 Wn.2d at 884. In Irby, the court dismissed 10 jurors through an e-mail conversation between the judge and counsel. 170 Wn.2d at 884. In that case, because the record did not indicate Irby knew of the e-mail, or had a reasonable opportunity to object, the court heard the merits of his claim. Irby, 170 Wn.2d at 884; Slert, 186 Wn.2d at 875-76.

Unlike in Irby, New had the opportunity to object on two occasions. First, the court informed New and counsel of the plan to take juror questions at the discretion of the parties, including and specifically by phone. If New intended to object and enforce his right to be present, he could have objected at that notion. Second, the court read New the jury question and the court's answer the following day in court, prior to summoning the jury and hearing the jury's verdict. New had a reasonable opportunity to object to his lack of presence during the discussion and the court's answer, but he did not. Therefore, the issue is unpreserved.

Even if New had timely objected, however, his claim that the conference with counsel over the jury's inquiry was a critical stage of the proceeding fails. A defendant does not have the right to be present when the trial court confers with counsel on a purely legal issue of how to respond to a jury request for clarification on one of the court's instructions. Sublett, 156 Wn. App. at 182-83; State v. Wright, ___ Wn. App. 2d ___, 492 P.3d 224, 229-31 (2021).

D. Prosecutorial Misconduct

New argues that various statements made during closing argument constitute prosecutorial misconduct, thus depriving him of a fair trial. We disagree.

Improper arguments made by prosecutors may deprive the defendant of a fair trial. In re Pers. Restraint of Glasmann, 175 Wn.2d 969, 703-04, 286 P.3d 673 (2012). To prove prosecutorial misconduct, the defendant bears the burden of establishing that the prosecutor's conduct was improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). If the defendant failed to object at trial, that burden increases. Any error is waived, "unless the remark is deemed to be so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Gentry, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). We view comments made in closing argument within "the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

New raises several arguments concerning the following statement made during the State's closing argument:

> And you know what else is credible? Do you remember how you shifted in your seats when she told you about those smells in the shower, the pain she felt when her father pushed another finger inside of her into that office chair? Do you remember how you felt when [J.T.] told you she couldn't smell Pantene anymore because it always brought those memories back to her? You felt those feelings because what you heard had a ring of truth to it. They rang true. You were uncomfortable hearing a woman describe her abuse when she was a child because you knew that what she was saying was true. You know she was not making this up. You can assess that credibility and decide for yourselves if you thought she was making this up. And you will come to the end of this trial and you will decide that

yes, [J.T.] was telling the truth because, you know, if they were lying, if [J.T.] was lying, that they would have had a better plan, they would have a better story to tell you. She would [not] have told you how she liked it and went back and begged for more from her father, asking her to let it start up again, promising her dad that she would never tell again, just so long he'd start loving her again. But she did tell you that because that's her truth.

First, New contends the prosecutor referenced facts not in evidence and inflamed the jury's passions and prejudice by discussing the jurors' feelings and discomfort while listening to J.T.'s testimony. A prosecutor commits misconduct by making arguments unsupported by admitted evidence. State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1998). Prosecutorial appeals to the passions and prejudices of the jury similarly constitute misconduct. Belgarde, 110 Wn.2d at 507-08.

"[P]rosecutors represent the public, including defendants, and have a duty to see that fair trial rights are not violated." State v. Craven, 15 Wn. App. 2d 380, 385, 475 P.3d 1038 (2020). "A prosecutor acts improperly by seeking a conviction based upon emotion rather than reason." Craven, 15 Wn. App. 2d at 285. In Craven, the prosecutor told the jurors "they would know Craven's guilt beyond a reasonable doubt by, in equal measure, recognizing it intellectually and feeling it emotionally in their hearts and viscerally in their guts." Craven, 15 Wn. App. 2d at 387. This court concluded that because the prosecutor's argument expressly invited jurors to use their emotions and instincts equally with intellect when reaching a verdict, the closing argument was improper. Craven, 15 Wn. App. 2d at 390.

This case is similar to Craven. The prosecutor's statement was inappropriate. Comments such as, "[d]o you remember how you shifted in your seats" and "[y]ou were uncomfortable hearing a woman describe her abuse" undoubtedly intended to ruffle the

-15-

jury and question more than just facts and credibility. The prosecutor, as in Craven, asked the jury to consider their gut feeling and emotional response to J.T.'s testimony. Emotions and gut feelings are not based upon the evidence presented at trial and are thus improper prosecutorial remarks.

While the court does not condone or appreciate these remarks, New did not object. Therefore, the remarks must be deemed so flagrant and ill intentioned that it leaves an enduring and resulting prejudice the trial court could not neutralize. Gentry, 125 Wn.2d at 596. While inappropriate, the prosecutor's remarks do not reach that level of prejudice.

Second, New argues that the above statement was improper because it implied that the jury must find J.T. was "lying" or "making this up" to acquit. It is improper for a prosecutor to assert that the jury must find the State's witnesses are lying or mistaken to acquit. State v. Rich, 186 Wn. App. 632, 649, 347 P.3d 72 (2015), rev'd on other grounds, 184 Wn.2d 897, 365 P.3d 746 (2016). That is not what the State did here. The State only pointed to J.T.'s testimony, including her statements that she went back to New asking for more. The State did not directly argue or imply that the jury needed to find J.T. was lying in order to acquit.

Third, New argues that the above statement resulted in the prosecutor vouching for J.T.'s credibility. A statement is vouching if "the prosecutor expresses his or her personal belief as to the veracity of the witness." State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). However, "[al]though it is improper for a prosecutor to vouch for a witness's credibility, a prosecutor has wide latitude in closing argument to draw

-16-

reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." State v. Lewis, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

New fails to demonstrate that the prosecutor improperly vouched for J.T. While the prosecutor stated "[y]ou know she was not making this up," this statement was immediately followed by the statement "[y]ou can assess that credibility and decide for yourselves if you thought she was making this up." The prosecutor did not express their belief that J.T. was credible.

New next argues it was misconduct for the prosecutor to argue that "the law in Washington doesn't require any sort of corroborating evidence to prove that a crime was committed." At trial, the State proposed that the trial court include as a written jury instruction the statutory language, "[i]t shall not be necessary that the testimony of the alleged victim be corroborated." RCW 9A.44.020(1). The court concluded, "there is no WPIC [] because, frankly, for the Court to say this to the jury is a comment on the evidence, and I don't think I should." The State asserted it intended to state the rule in closing. The court replied, "I'd be shocked if you didn't argue that. All right. And you're legally grounded to argue it, but it's not something I can say." New did not object.

A prosecutor's argument "must be confined to the law as set forth in the instructions given by the court." State v. Davenport, 100 Wn.2d 757, 766, 675 P.2d 1213 (1984). While this is true, the State's argument was not a misstatement of law, nor was it erroneous. The trial court gave explicit permission to present the rule in closing and New did not object. New cannot now argue on appeal that this constitutes prosecutorial misconduct.

Finally, New argues that the prosecutor denigrated the defense counsel in rebuttal by characterizing New's closing argument as intending to distract the jury. The prosecutor argued, "Mr. New wants you to focus on all of [Ham's] actions and look at the shiny object over here rather than the truth of what [J.T.] told you." New cites State v. Lindsay, 180 Wn.2d 423, 433-34, 326 P.3d 125 (2014) and State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011), for support. In Lindsay and Thorgerson, the court determined that the prosecution committed misconduct by referring to the defense theory as "a crock" or "bogus" and "sleight of hand." However, in those cases, the misconduct arose from prosecutors calling the defense theory dishonest and deceptive. Here, the prosecutor was citing portions of the defense testimony and closing as distraction. The prosecutor did not argue that defense counsel was deceiving the jury or being dishonest to the jury.

E. Cumulative Error

New argues that reversal is required because the cumulative effect of the violation of his right to be present along with prosecutorial misconduct deprived him of a fair trial. We disagree.

An accumulation of errors may deprive a defendant of their right to a fair proceeding. Chambers v. Mississippi, 410 U.S. 284, 290 n.3, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); Emery, 174 Wn.2d at 766. The doctrine applies when errors, alone not justifying reversal, accumulate to deny the defendant a fair trial. Emery, 174 Wn.2d at 766. It does not apply if the defendant fails to establish error. Emery, 174 Wn.2d at 766. Because New did not establish error, the cumulative error doctrine does not apply.

F. <u>Supervision Fees</u>

New finally argues that the trial court improperly imposed nonmandatory supervision fees. We agree.

RCW 9.94A.703(2) provides that "unless waived by the court, as part of any term of community custody, the court shall order an offender to: (d) Pay supervision fees as determined by the department." <u>State v. Dillion</u>, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). Because they are discretionary, the court is not required to impose supervision fees. <u>State v. Lundstrom</u>, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018). In <u>Dillion</u>, the trial court improperly imposed the Department of Corrections supervision fee on an indigent defendant. 12 Wn. App. 2d at 152. There, the appellate court struck the supervision fees because the record demonstrated that the trial court only intended to impose mandatory fees, and supervision fees are discretionary. <u>Dillion</u>, 12 Wn. App. 2d at 152.

Similarly in this case, the trial court stated, "I'm waiving all nonmandatory costs and fees. I really don't believe that Mr. New has resources." Therefore, consistent with the trial court's intent to waive discretionary costs, we remand the case to the superior court to strike the nonmandatory supervision fee.

We remand to strike the supervision fees. We otherwise affirm.

_Mann, C.J._

WE CONCUR:

-19-